OPINION OF THE COURT
Catherine T. England, J.
The predominant issue in this divorce action governed by the New York Equitable Distribution Law is whether a nonvested Long Island Railroad retirement pension is marital property subject to equitable distribution. The court answers the question in the negative.
This action for divorce by the plaintiff wife upon the grounds of constructive abandonment and defendant’s cruel and inhuman treatment of plaintiff was commenced on September 19, 1980. The relief requested by plaintiff consisted of equitable distribution of the parties’ marital property, reasonable maintenance and child support, exclusive use, occupancy and possession of the marital residence, counsel fees, custody of the infant issue of the marriage, and a direction that defendant provide plaintiff and the infant issue of the marriage full medical, health and life insurance.
The action came on for nonjury trial before this court on June 21,1982. The credible evidence adduced herein shows *79 that the parties were married on May 12, 1962 in Ridge-wood, New York. There are three infant issue of the marriage, to wit: Karen, born December 8,1962, Carl, born October 20, 1963, and Kevin, born January 18, 1966. Defendant husband has been employed by the Long Island Railroad, as a signal man since September 29, 1969, earning approximately $396.16 gross per week, without overtime. Plaintiff wife is employed sporadically as a school bus driver, earning approximately $60 per week. She has also worked as a baby-sitter on a part-time basis, and was employed part time by the Internal Revenue Service in 1972. She is a high school graduate and presently appears to have a full-time position wherein she earns approximately $157.50 net per week.
It appears that on at least seven occasions, namely, in September, 1980, January, 1980, August, 1979, July, 1979, June, 1979, Easter Sunday, 1979 and during the winter of 1976, defendant committed acts of physical violence on plaintiff. She further testified, and it appears, that any acts of sexual intercourse which took place occurred without plaintiff’s consent. It further appears that there were numerous occasions of shouting and name calling, and, on one occasion, she sought medical attention for her strained nerves.
Based on the evidence, the court finds that plaintiff wife has proven her cause of action on both grounds, and, accordingly, grants plaintiff a judgment of divorce herein. Plaintiff is granted custody of the one infant issue, Kevin, age 16, with liberal visitation privileges to defendant. Since the issue Karen and Carl are both over the age of 18, the court is without authority to make an award of child custody to either party. (Adamec v Adamec, 81 AD2d 600.)
There are two basic issues to be determined herein, i.e., the disposition of the marital premises, and whether a Long Island Railroad nonvested pension at the time of the commencement of the action is marital property subject to equitable distribution.
The marriage relationship since the passage of the Equitable Distribution Law has come to be viewed as an economic partnership. “Upon its dissolution, property accumulated during the marriage should be distributed in a *80 manner which reflects the individual needs and circumstances of the parties regardless of the name in which such property is held” (Governor’s Memorandum of Approval, McKinney’s Session Laws of NY, 1980, p 1863).
All property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held constitutes marital property by definition. (Domestic Relations Law, § 236, part B, subd 1, par c.) Under the Long Island Railroad retirement plan, defendant accrues a pension of 2% of his final year’s pay for each of his 25 years of service, plus 1.5% of such pay for each year thereafter. These benefits vest after 20 years and can be paid as early as age 50. Benefits are normally payable for the retired employee’s lifetime (without cost of living adjustments) and are reduced at age 65 by 50% of whatever retirement benefit is then payable to defendant under the railroad retirement board program. The final year’s pay excludes overtime but includes 10 weeks of accrued vacation time. There is a lump-sum death benefit of up to $5,000 payable if death occurs before an employee is vested (20 years). Death benefits payable after an employee vests are a percentage of his accrued benefit to his wife, if married (or up to $5,000, if single). Railroad retirement board benefits are in lieu of, and similar to, Social Security benefits, and are in addition to benefits payable under this plan. Full railroad retirement board benefits can be received at age 60 with 30 years of service or at age 65. Eighty per cent of full benefits may be received at age 62 with less than 30 years of service.
It is significant that over the past several years, pension benefits have become an increasingly important part of an employee’s compensation package which he or she brings to a marriage unit. Moreover, in a situation where economic circumstances prevent a husband and wife from saving or investing a portion of the wage earner’s income, the pension right swells in importance as retirement or vesting approaches, and, may well represent the most valuable asset accumulated by either of the marriage partners. Accordingly, those States which, like New York, *81 confer authority on courts considering divorce matters to make some form of distribution of joint and separate property upon termination of a marriage, with near unanimity, subject retirement benefits in general to division between the former spouses (e.g., Malone v Malone, 587 P2d 1167 [Alaska]; Van Loan v Van Loan, 116 Ariz 272; Matter of Mitchell v Mitchell, 195 Col 399; Matter of Brown v Brown, 15 Cal 3d 838; Robert C.S. v Barbara J.S., 434 A2d 383 [Del]; Tavares v Tavares, 58 Hawaii 541; Ramsey v Ramsey, 96 Idaho 672; Matter of Hunt v Hunt, 78 Ill. App 3d 653; Libunao v Libunao, 388 NE2d 574 [Ind]; Matter of Schissel, 292 NW2d 421 [Iowa]; Foster v Foster, 589 SW2d 223 [Ky]; Sims v Sims, 358 So 2d 919 [La]; Miller v Miller, 83 Mich App 672; Elliott v Elliott, 274 NW2d 75 [Minn]; Matter of Powers, 527 SW2d 949 [Mo]; Matter of Vert v Vert, 613 P2d 1020 [Mont]; Kullbom v Kullbom, 209 Neb 145; Kruger v Kruger, 73 NJ 464; Deering v Deering, 292 Md 115; Kikkert v Kikkert, 88 NJ 4; Majauskas v Majauskas, 110 Misc 2d 323; Martinez v Martinez, NYLJ, Oct, 13, 1981, p 17, col 5; Perri v Perri, 115 Misc 2d 478; Hebron v Hebron, 116 Misc 2d 803; Soto v Soto, NYLJ, Dec. 17, 1982, p 7, col 3; Keig v Keig, 270 NW2d 558 [ND]; Matter of Rogers v Rogers, 45 Ore App 885; Hansen v Hansen, 273 NW2d 749 [SD]; Cearley v Cearley, 544 SW2d 661 [Tex]; Englert v Englert, 576 P2d 1274 [Utah]; Payne v Payne, 82 Wn 2d 573; Bloomer v Bloomer, 84 Wis 2d 124; see, also, DiLeo & Model, A survey of Law of Property Disposition upon Divorce in Tristate Area, 56 St. John’s L Rev 219, 231; Foster, Commentary on Equitable Distribution, 26 NY Law School L Rev 1, 35; Note, Equitable Distribution in New York, 45 Albany L Rev 483, 499; Note, New York’s Equitable Distribution Law: A Sweeping Reform, 47 Brooklyn L Rev 67, 98; Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses, Ann., 94 ALR3d 176).
This compendium of representative cases essentially views pension benefits as an economic resource acquired with the fruits of the wage earner spouse’s labors which would otherwise have been utilized by the parties during the marriage to purchase other deferred income assets. However, there is a split of authority as to whether a *82 nonvested pension is marital property subject to equitable distribution (cf. Miller v Miller, supra [nonvested retirement annuity not a marital asset]; Daffin v Daffin, 567 SW2d 672 [Mo] [nonvested pension not a marital asset]; Matter of Miller, 609 P2d 1185 [Mont]; Copeland v Copeland, 91 NM 409; Savage v Savage, 374 NE2d 536 [Ind]; Wilcox v Wilcox, 173 Ind App 661) and those States which hold that a nonvested pension is marital property subject to equitable distribution (Van Loan v Van Loan, supra; Linson v Linson, 1 Hawaii. App 272; Matter of Gillmore v Gillmore, 29 Cal 3d 418; Shill v Shill, 100 Idaho 433; Matter of Hunt v Hunt, 78 Ill App 3d 653, supra; Robert C.S. v Barbara J.S., supra; Beering v Beering, supra; Cearley v Cearley, supra; DeRevere v DeRevere, 5 Wash App 741; Leighton v Leighton, 81 Wis 2d 620).
Only recently, the Supreme Court of New York County held that a nonvested New York City fireman’s pension was marital property subject to equitable distribution (Hebron v Hebron, supra). However, it appears here that defendant must work for the Long Island Railroad for another seven years prior to attaining vested status. Accordingly, plaintiff’s rights are speculative at best since, should defendant die or retire today, she would be entitled to none of defendant’s pension benefits at all. Furthermore, there is a danger in the form of adverse tax consequences should the court award a portion of defendant’s pension benefits if, as and when received. Under section 402 of the Internal Revenue Code (US Code, tit 26, § 402), a distribution from a qualified plan is taxable to the employee as ordinary income with some exceptions. The employee spouse may be taxable on payments received by that spouse under an obligation to transfer all or a portion of the payments to the nonemployee spouse. The payments to the nonemployee spouse, parenthetically, may independently qualify as maintenance or alimony under section 71 of the Internal Revenue Code and be deductible under section 215 (Daniel v Commissioner of Internal Revenue, 56 TC 655, affd 461 F2d 1265). Furthermore, the employee spouse may be subject to taxation in the form of capital gains taxation when retirement benefits are granted to the nonemployee spouse, under the rationale of United States v *83 Davis (370 US 65). If Davis were to apply, the employee spouse would be taxable on the difference between the present value of the transferred benefits and the basis in those benefits (see O’Connell, Tax Treatment of Retirement Plans, Insurance and Employee-Related Benefits in a Divorce, BNA, 1980 Divorce Taxation Handbook; Stripling, Transfer of Pension Benefits Incident to Divorce or Separation: An Analysis, Journal of Taxation, April, 1981, p 216).
Accordingly, the court holds that defendant’s non-vested pension is not marital property subject to equitable distribution. Plaintiff may take solace in the fact that beginning in 1982, divorced wives of railroad retirees are eligible for the same spousal benefits as are provided by the Social Security Act (Pub L No. 97-35, 97th Cong, 1st Session, § 1117 [1981], 95 US Stat 628). The benefits are available if the divorced wife has not remarried, has attained age 65 (62 for a reduced annuity), and was married to the employee for at least 10 years. The employee must be age 62 or over. The amendments also provide surviving divorced wife benefits (Pub L No. 97-35, 97th Cong, 1st Session, § 1117, subd [c] [1981], 95 US Stat 629).
Another key issue with regard to the disposition of the marital premises and with appreciated assets in general is whether the New York law on marital ownership brings a transfer of appreciated property within the rule of United States v Davis (supra). This court holds that it does.
If, upon the dissolution of a marriage, property (other than cash) is transferred from one spouse to the other, the transfer may be a taxable event. This will be so if the property is transferred to satisfy a marital obligation of the transferor spouse, such as the obligation of support (United States v Davis, supra). The transfer of property in exchange for cash, property other than cash, or in exchange for the discharge of any obligation, including those growing out of the marital relationship, is generally a realization event to the transferor for tax purposes, i.e., the transferor must realize appreciation or depreciation (United States v Davis, supra; see, also, Matter of Bird v United States, 534 F2d 1214; Farid-Es-Sultaneh v Commissioner of Internal Revenue, 160 F2d 812). Property received in exchange for the *84 relinquishment of marital rights receives a basis equal to its fair market value at the time it is received to the extent that the transfer was the result of an arm’s length transaction. (Farid-Es-Sultaneh v Commissioner of Internal Revenue, supra; Matter of Gardner v Commissioner of Internal Revenue, 20 TC 885; cf. United States v Davis, supra). An equal (or substantially equal) division of jointly held property, on the other hand, is not a realization event. This is so whether each spouse receives one half of each asset or whether each asset has been allocated to one spouse or the other with each spouse receiving one half of the total value (Rev Rul 81-292, Int Rev Bull 1981-50; Rev Rul 76-83, 1976-1, Cum Bull 213; Rev Rul 56-437, 1956-2, Cum Bull 507).
As the United States Supreme Court anticipated, its Davis decision has created a disparity in tax treatment of property settlements from State to State. By noting the possibility of different tax treatment between common-law and community property jurisdictions, the Supreme Court indicated the general applicability of its holding to common-law jurisdictions. The neat division between common-law and community property concepts was quickly eliminated. To date, the cases which hold that, upon the commencement of an action for dissolution of a marriage, there exists a species of co-ownership in property, i.e., a special equity in the recipient spouse so as to treat property transfers upon divorce in noncommunity property States similarly to how the same transaction would be treated if it had taken place in a community property State are Engle v Engle (293 Ore 207), the Collins decisions, applying Oklahoma law (Collins v Commissioner of Internal Revenue, 388 F2d 353 [Collins I]; Collins v Oklahoma Tax Comm., 446 P2d 290 [Okla] [Collins II]; Collins v Commissioner of Internal Revenue, 393 US 215 [Collins III]; and Collins v Commissioner of Internal Revenue, 412 F2d 211 [Collins IV]). Furthermore, although Florida is not clearly an equitable distribution State, under Florida law, a divorce court may recognize that a spouse may have “special equity” in his or her spouse’s property by virtue of making an identifiable contribution during marriage to said property (see, e.g., Bosch v United States, 590 F2d 165; Mann v Commis *85 sioner of Internal Revenue, 74 TC 1249). Several other States have passed laws which appear to be designed to prevent a Davis taxable event. Whether or not such statutes will succeed in avoiding the Davis result will not be clear until they have been judicially interpreted. The service will now rule on the determination of the amount of, and recognition of, gain or loss in divorce property settlements (Rev Procedures 82-21 [March 22,1982], modfg Rev Procedures 81-10 [Minn-Minn L 1982, ch 464, § 3]; NC Gen Stats, § 50-20, subd [k]; Mo Stats Ann, § 452.330). The service recognizes that a species of ownership may exist in common-law States which is sufficiently similar to community property in order to justify nontaxable division treatment. Revenue Ruling 74-347 states that “[p]roperty may be coowned where (1) title to it is taken jointly under State property law, (2) the State is a community property law State, or (3) State property law is found to be similar to community property law.”
The “species of ownership” theory has been rejected in Kansas (Wiles v Commissioner of Internal Revenue, 60 TC 56, acq 1973-2 Cum Bull 4, affd 499 F2d 255, cert den 419 US 996), Iowa (Wallace v United States, 439 F2d 757), Tennessee (Matter of Dunn v Commissioner, 36 TCM 664), West Virginia (McKinney v Commissioner of Internal Revenue, 64 TC 263), Massachusetts (Forbes v United States, 472 F Supp 840), Connecticut (Thomas v Thomas, 271 A2d 62) and Illinois (Matter of McCune v McCune, 86 Ill App 3d 311).
In New York it has been suggested that in granting temporary restraining orders or preliminary injunctions restraining the transfer of marital property pending the ultimate resolution of the underlying divorce action, the courts which have done so have determined that at least as of the time of the commencement of the matrimonial action, each spouse’s interest in the marital property had vested (see, e.g., Froelich-Switzer v Switzer, 107 Misc 2d 814; Annexstein v Annexstein, NYLJ, April 24, 1981, p 7, col 2). Furthermore, one New York lower court claimed that a wife had a special interest in the husband’s assets which had arisen not only at the time of the matrimonial action, but prior thereto, and restrained a husband from *86 purchasing, virtually sight unseen, a delicatessen during the course of the divorce action (Kriger v Kriger, 115 Misc 2d 595).
However, viewing an equitable distribution of marital property within the guiding lights known as the “ten factors” the court is required, in New York, to consider, the court concludes that a transfer of the kind under consideration here is analogous to a satisfaction of an independent legal obligation, and the rule enunciated in Davis (370 US 65, supra) applies. Furthermore, the Collins quartet and the Imel decisions are not immune from criticism. Neither line of cases establishes a vested property right in the wife during marriage. The notion that the parties become co-owners of separately held property at a point in time when they decide they do not want to own anything jointly is a hard one to rationalize. Criticism of Davis (supra) in terms of policy may be justified. However, any adjustment in Davis is for the Federal courts and the Federal Government (Engle v Engle, 293 Ore 207, supra [Tanzer, J., dissenting, at p_]). The distinction made by the Oklahoma courts appear to be one without substance. In both States the wife had little in the nature of a property interest in her husband’s separate property during the marriage. It is incongruous to say that she suddenly becomes a co-owner of the property by virtue of a decision to obtain a divorce and seek a division of property, and the rationale becomes even more attenuated in light of the court’s power to make the division in a manner which the court deems equitable (Domestic Relations Law, § 236, part B, subd 5, and the factors enumerated therein). Finally, it has been held that a spouse has no rights to any specific property of the other spouse, and the court may satisfy her rights by dividing jointly owned property, by ordering the husband to transfer to her his separately owned property or by directing a distributive award (Matter of Henry v Castagnaro, 106 Misc 2d 574). Accordingly, Davis (supra) applies to New York.
With regard to the remaining issues, the court determines as follows:
(1) With regard to the issue of arrears, the court holds that plaintiff is entitled to and is awarded a money judg *87 ment in her favor and against defendant in the sum of $3,061.70 representing arrears in child support, carrying charges on the marital residence and interim counsel fees;
(2) Plaintiff is awarded exclusive occupancy of the marital residence and its contents. When all of the infant issue have attained the age of 21 or all are sooner emancipated, said marital residence shall be sold at a price at or above the then fair market value, and the net proceeds divided equally between the parties;
(3) After consideration of all of the factors enumerated in section 236 (part B, subd 6) of the Domestic Relations Law, with regard to maintenance, and section 236 (part B, subd 7) with regard to child support, particularly, the respective incomes and standard of living of the parties, their health, the health of the children, and their capacities for gainful employment, the court awards plaintiff the sum of $60 per week for her support and maintenance. Said payments shall commence with defendant’s first paycheck received in January, 1983, and shall continue until his last paycheck received in December, 1987. Plaintiff is further awarded $15 per week for the support and maintenance of each of the three infant issue of the marriage, said payments to, likewise, commence upon defendant’s receipt of his first paycheck of January, 1983;
(4) Plaintiff is awarded a counsel fee in the sum of $3,500 for all legal services rendered and to be rendered to and including settlement of the decree to be submitted herein.