Douglas M. BROADHEAD,
Appellant (Plaintiff),

v.

Verdene N. BROADHEAD,
Appellee (Defendant).

No. 86–110.

Supreme Court of Wyoming.

May 12, 1987.

Timothy J. Bommer, Jackson, for appellant.

Dennis L. Sanderson, Afton, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Husband appeals from a divorce decree-property settlement, with these stated issues:

1. Did the trial court err in entering a judgment inconsistent with its decision letter?

2. Did the trial court err and/or abuse its discretion in reconsidering and changing its initial decision before entry of the final judgment?

3. Did the trial court err in granting to the wife a continuing and appreciating future interest in the husband's retirement fund?

We affirm as to issues one and two, and affirm in part and reverse in part on the retirement-fund division in issue three.

## FACTS

Verdene N. and Douglas M. Broadhead, married for approximately 19 years and blessed with six children, had jointly acquired an array of both real and personal property before embarking on a divorce contest.

Shortly after their 1967 marriage, the husband, plaintiff-appellant Douglas Broadhead, began attending college to obtain a teaching degree. While he worked part time, defendant-appellee Verdene Broadhead worked full time in support of the family. Upon graduation, Douglas started teaching and continued graduate studies in education while Verdene began attending college and worked part time. Eventually, through a combination of work and attendance at various educational institutions by both parties, Douglas received a master's degree, and Verdene completed three years of undergraduate studies. In 1974, the family moved to Star Valley, Wyoming, where the husband took his present employment with the Lincoln County School system as a teacher and coach, while the wife was a full-time homemaker and mother.

In January of 1985, when both parties were in their early forties, Douglas filed for divorce. Responsively, Verdene asserted an affirmative defense and counterclaimed. The evidence at the June trial established that the husband had obtained, through employment with the Lincoln County School system, a vested interest in the state retirement fund with a present value of $15,434.98, as employee attributed contributions. Additionally, the present allocable amount from employer contributions (*nonvested*) was of approximately the same amount.

After trial, the judge tendered a provisional decision letter requesting suggestions or approval. Both parties answered, and the trial judge responded by a second decision letter. Due to changed circumstances after trial, Verdene had asked the trial court to reconsider its first proposed decision, and upon stipulation by both litigants the court informally held a further hearing on the reconsideration request and content of the final divorce decree.

Thereafter, the trial court entered the divorce decree substantially different from provisions of the decision letters. The decree included as terms relevant to this appeal that:

"Subject to the provisions of paragraph (8–B–2) [1] on page 8 of this decree, the

---

1. Paragraph 8–B–2 provides:
 "The Defendant's share of the Plaintiff's retirement, as provided in paragraph (7–B–7), page 7 shall be reduced by SEVEN THOUSAND SEVEN HUNDRED SIXTY–SEVEN DOLLARS AND FORTY–NINE CENTS ($7,767.49)."

Defendant [Verdene] will have an interest in the Plaintiff's [Douglas] retirement when he is either terminated or retired which ever first occurs. The wife's interest shall be determined as follows:

"Upon termination of employment

"Wife's share =

"$7,767.49 + $\left[\dfrac{7,767.49}{E}\right]$ (E–15,434.98)

"Upon retirement

"Wife's share =

"$15,434.98 + $\left[\dfrac{15,434.98}{T}\right]$. (T–30,869.96)

"(E = Total Employee Contributions; T = Total of Employer and Employee Contributions)

"The Plaintiff will instruct the appropriate personnel at the Wyoming Retirement system of the contents of this order and direct it to make the appropriate division at the appropriate time."

This formula effectuated a future division of both vested and nonvested retirement benefits by percentage distribution.

### FINAL JUDGMENT

 The trial judge's decision letters, discussing legal principles and expressing his conclusions of law, did not constitute a judicial determination which may be considered a final order. We analogize that, if a trial court in exercise of its discretion may modify tentative decisions until entry of the final order, it does not err in rendering a decree with changed provisions.

Rules 58(b) and 54(a), W.R.C.P. state, respectively:

"A judgment or final order in any case shall be deemed to be entered whenever *a form of such judgment or final order,* signed by the trial judge, is filed in the office of the clerk of the court in which the case is pending." (Emphasis added.)

"A judgment is the *final determination of the rights of the parties in action.*" (Emphasis added.)

The court's first decision letter expressly stated that it was a "tentative disposition" and that the court wished to receive comments from counsel "[b]efore reducing the Court's conclusions to final judgment." Additionally, while the second decision letter conveyed more finality, the court thereafter issued its decree of divorce which considered all evidence and issues presented, including both decision letters and the second hearing, as the final order under Rule 58(b), W.R.C.P. It is noteworthy that the decision letters were in business-letter form and not a form customary for judgments and orders.

"[I]t has long been the rule in this jurisdiction that findings of fact and conclusions of law 'not in the form of an order' cannot be considered as a *final order* for purposes of appeal as that term was first defined in the Code of Civil Procedure. *Gramm v. Fisher,* 3 Wyo. 595, 29 P. 377, 378; *School Dist. No. 3, Carbon County v. Western Tube Co.,* 13 Wyo. 304, 80 P. 155, 159 * * *.

"The memorandum opinion, as we view it, did nothing more than express the trial judge's conclusion of law, which could be changed at any time prior to the entry of an order based thereon in keeping with Rule 58, W.R.C.P." *Wyoming State Treasurer, ex rel. Workmen's Compensation Department v. Niezwaag,* Wyo., 444 P.2d 327, 329 (1968).

While it is true that

"[o]nce a court has entered a decree dividing the marital property, the order is final and not subject to revision because of a change in circumstances." *Barnett v. Barnett,* Wyo., 704 P.2d 1308, 1309 (1985), citing *Paul v. Paul,* Wyo., 631 P.2d 1060 (1981),

it is apparent that a final order was only then entered by filing the March 25, 1986 decree of divorce. *United States v. Evans,* 365 F.2d 95 (10th Cir.1966).

### PROPERTY SETTLEMENT

In the major argument, appellant contends that nonvested retirement benefits

---

The present contribution is 5.57 percent for the employee, and 5.68 percent for the employer.

are not divisible property and, in the alternative, if considered to be marital property, that the trial court erred in granting a "continuing, appreciating and future interest" to the wife.

In this case, although contributions made by the employee can be withdrawn, no portion constituted matured benefits. For an excellent discussion differentiating between vested, nonvested, and matured retirement benefits, see *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164 (1976). For basic terminology, see Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Worker's Compensation and Other Wage Substitutes: An Insurance, or Replacement, Analysis,* 33 U.C.L.A. L.Rev. 1250 (1986).

A majority of jurisdictions have adopted the view that pensions and/or retirement funds, whether vested, nonvested, or not matured, are marital property divisible upon divorce.[2] Blumberg, supra. Additionally, retirement funds earned during marriage represent a form of deferred compensation.

"To the extent that they [retirement funds, pensions] result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property." *Majauskas v. Majauskas,* 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984). "From an economic point of view, the employee funds his own pension regardless of whether he or his employer is the nominal payor. The burden of the employer's contribution is passed back to the employee in the form of reduced wages. Thus, legal doctrine characterizes the pension as deferred compensation and assumes that, absent the pension, the employee would have received a commensurately greater salary during his working years." Blumberg, supra, at 1258.

See also, *In re Marriage of Brown,* supra, *Jerry L.C. v. Lucille H.C.,* Del., 448 A.2d 223 (1982); *In re Marriage of Hunt,* 78 Ill.App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511 (1979); *Hatcher v. Hatcher,* 129 Mich.

**2.** Arizona: *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981); *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977). Arkansas: *Day v. Day,* 281 Ark. 261, 663 S.W.2d 719 (1984). Connecticut: *Thompson v. Thompson,* 183 Conn. 96, 438 A.2d 839 (1981). Delaware: *Jerry L.C. v. Lucille H.C.,* Del., 448 A.2d 223 (1982); *Robert C.S. v. Barbara J.S.,* Del., 434 A.2d 383 (1981). Hawaii: *Linson v. Linson,* 1 Hawaii App. 272, 618 P.2d 748 (1980); cf. *Tavares v. Tavares,* 58 Hawaii 541, 574 P.2d 125 (1978). Idaho: *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979). Illinois: *In re Marriage of Fairchild,* 110 Ill.App.3d 470, 66 Ill.Dec. 131, 442 N.E.2d 557 (1982); *Pieper v. Pieper,* 79 Ill.App.3d 835, 34 Ill.Dec. 877, 398 N.E.2d 868 (1979); *In re Marriage of Hunt,* 78 Ill.App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511 (1979); cf. *In re Marriage of Evans,* 85 Ill.2d 523, 55 Ill.Dec. 529, 426 N.E.2d 854 (1981); *Pickell v. Pickell,* 76 Ill.App.3d 855, 32 Ill.Dec. 443, 395 N.E.2d 673 (1979). Louisiana: *Sims v. Sims,* La., 358 So.2d 919 (1978). Maryland: *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981). Massachusetts: *Dewan v. Dewan,* 17 Mass.App. 97, 455 N.E.2d 1236 (1983). Michigan: *Hatcher v. Hatcher,* 129 Mich.App. 753, 343 N.W.2d 498 (1983); *Boyd v. Boyd,* 116 Mich.App. 774, 323 N.W.2d 553 (1982). Minnesota: *Janssen v. Janssen,* Minn., 331 N.W.2d 752 (1983); *Taylor v. Taylor,* Minn., 329 N.W.2d 795

(1983). Montana: *In re Marriage of Laster,* 197 Mont. 470, 643 P.2d 597 (1982). Nebraska: *Kullbom v. Kullbom,* 209 Neb. 145, 306 N.W.2d 844 (1981). Nevada: *Ellett v. Ellett,* 94 Nev. 34, 573 P.2d 1179 (1978). New Mexico: *Berry v. Meadows,* 103 N.M. 761, 713 P.2d 1017 (1986). New York: *Cohen v. Cohen,* 64 N.Y.2d 773, 485 N.Y.S.2d 990, 475 N.E.2d 457 (1985); *Cohen v. Cohen,* 104 A.D.2d 841, 480 N.Y.S.2d 358 (1984); *Lentz v. Lentz,* 117 Misc.2d 78, 457 N.Y.S.2d 401 (1982), aff'd as modified, 103 A.D.2d 822, 478 N.Y.S.2d 56 (1984); *Hebron v. Hebron,* 116 Misc.2d 803, 456 N.Y.S.2d 957 (1982). North Dakota: *Delorey v. Delorey,* N.D., 357 N.W.2d 488 (1984); *Bullock v. Bullock,* N.D., 354 N.W.2d 904 (1984); *Glass v. Glass,* N.D., 344 N.W.2d 677 (1984). Ohio: *Bohnlein v. Bohnlein,* 11 Ohio Misc.2d 16, 463 N.E.2d 666 (1983). Oklahoma: *Carpenter v. Carpenter,* Okla., 657 P.2d 646 (1983). Pennsylvania: *Flynn v. Flynn,* 341 Pa. Super. 76, 491 A.2d 156 (1985); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984); *Salac v. Salac,* 10 Fam.L.Rptr. (BNA) 1308 (1984). Utah: *Woodward v. Woodward,* Utah, 656 P.2d 431 (1982). Virginia: Va. Code § 20–107.-3(E)(8), Supp. 1982. Washington: *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975). Wisconsin: *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978).

App. 753, 343 N.W.2d 498 (1983); *Kikkert v. Kikkert*, 177 N.J.Super. 471, 427 A.2d 76, aff'd, 88 N.J. 4, 438 A.2d 317 (1981); *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978); Foster, A Practical Guide to the New York Equitable Distribution Divorce Law, pp. 159–188, 191–200; and extended Annot., 94 A.L.R.3d 176.

### WYOMING PRECEDENT

Section 20-2-114, W.S.1977, 1986 Cum. Supp., states:

"In granting a divorce, the court shall make such disposition of the *property of the parties* as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party." (Emphasis added.)

We acknowledge the language enunciated in *Storm v. Storm*, Wyo., 470 P.2d 367, 370 (1970):

" * * * With respect to future property, we think the rule must be that, when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and a mere expectancy is not subject to division. *Hill v. Hill*, 82 Cal. App.2d 682, 187 P.2d 28, 36 [1947].

* * * * * *

"It would not be 'just and equitable' to consider such property a part of the marital estate and in the hands of the court for disposition.

"In speaking of future property, we are referring to a prospective expectancy of an estate which may come into being in the future as distinguished from future benefits to be derived from an estate already in existence. Courts have frequently distinguished between assets earned during coverture and those to be acquired in the future.

"For example, in *French v. French*, 17 Cal.2d 775, 112 P.2d 235, 236–237, 134 A.L.R. 366 [1941], it was held pay which the husband would receive in the future as a member of the Fleet Reserve of the Navy for future services was not a 'pension' and was not subject to division. On the other hand, pay received up to the dissolution of the marriage was community property and subject to division.

"It was recognized in *Morris v. Morris*, 69 Wash.2d 506, 419 P.2d 129, 130–131 [1966]; and in *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755, 756 [1969], that only that portion of military and naval retirement pay earned 'during coverture' was community property and subject to division upon the granting of a divorce.

"And in *Beaulac v. Beaulac*, 84 Cal. App.2d 649, 191 P.2d 478, 480 [1948], it was said an award to the husband of $450 out of $900 earned by the wife after separation was erroneous."

See also *Kane v. Kane*, Wyo., 577 P.2d 172 (1978).

However, in haec verba, *French v. French*, 17 Cal.2d 775, 112 P.2d 235, 134 A.L.R. 366 (1941) was specifically overruled by *In re Marriage of Brown*, supra,[3] and it is unlikely that *Beaulac v. Beaulac*, 84 Cal.App.2d 649, 191 P.2d 478 (1948), *Hill v. Hill*, 82 Cal.App.2d 682, 187 P.2d 28 (1947); and *Morris v. Morris*, 69 Wash.2d 506, 419 P.2d 129 (1966), are the present law in either California or Washington.

No issue before or since Brown existed in most jurisdictions about either vested, matured, or vested nonmatured benefits being distributable, or in cases divisible by the divorce court in marital property division. The definable difference in court approach involves nonvested rights which,

---

**3.** The significance of *Brown* is reflected by a Shepardization record of subsequent citations numbering 388 (as of February 28, 1987).

within the facts of this case, are derived from attributed contributions of employer. As an example where the question was not previously answered by this court, see *Barney v. Barney*, Wyo., 705 P.2d 342 (1985). The second and corollary aspect is defined in the resulting judicial process whether to use a divorce-time present division or apply a post-divorce prospective retirement allocation.[4]

## NONVESTED RETIREMENT BENEFITS

Initially, the question arises whether the term "property of the parties" applies only to property which has some relation to marriage, either by being owned at the time of the marriage or by being acquired during coverture, or whether it also includes property to which one of the parties can expect to be entitled in the future constituting nonvested retirement benefits, or that alternatively vested interests may be contingently divided upon future receipt.[5]

■ We address whether generically, in divorce division, the court is entitled to take into account the value of nonvested retirement benefits. In answering this question in the affirmative, there remains the more difficult determination of method, as either a present division or a future allocation.

4. The vice of the formula approach afforded by the trial court is that Broadhead can, at his option and with employer agreement in that job circumstance, or by a change of school district in another job circumstance, take a fishing-trip termination, withdraw the benefits, come back, resume employment, and reinstate contribution, effectively having denied his ex-wife any rights to the employer share expectancy. This contribution withdrawal process is not unknown to state employees who want quick cash for outside investments, and may reinstate employment within a few days, hoping to redeposit contributions at a later date. The process is somewhat similar to taking a loan on insurance policies.

5. Future division of retirement benefit assets for mutual divorce decree, whether vested, nonvested, or matured, specifically related to Wyoming public employees under § 9–3–401, W.S.1977, et seq., involves at least the following contingencies:

 Spouse terminates, withdraws benefits, and does not reinstate.

 Spouse terminates, withdraws benefits, and does subsequently reinstate upon state government reemployment.

 Spouse terminates, does not withdraw benefits, and leaves as matured.

 Other spouse dies before spouse has either elected to terminate or retire.

 Other spouse dies after retirement but before spouse.

 Spouse dies before retirement.

 Spouse dies after retirement but before other spouse.

 Significant changes are made by the state after divorce and before retirement in the accrual of benefits.

 Significant changes are made by the state after retirement in the level of benefit payments.

It is noteworthy that none of the contingencies is controllable by the other spouse, and excluding the decision that can be made by the state for the fund, the significant voluntary choices are available to the spouse separately or conjunctively with his employer, with the grim reaper making the rest.

Two statutes specifically impact the contingency or the employee discretion factors:

Section 9–3–431, W.S.1977, 1986 Cum.Supp.:

"The accumulated employee contributions made by or in behalf of any member of the state employees' retirement association or other employee covered by this act who dies, plus regular interest, shall be paid to his designated beneficiaries, and in the absence of designated beneficiaries, to his legal representative, if any, and if none, to his legatees or heirs. In lieu of a lump sum payment a beneficiary may elect to receive the actuarial equivalent of the lump sum in a monthly allowance for life which is available to a retired member as provided in W.S. 9–3–417(e). If an employee, or beneficiary or survivor of either received annuities under this act before his or his survivor's death, the designated beneficiaries or the legal representative, legatees or heirs, as the case may be, shall receive the excess, if any, of contributions made by the employee plus regular interest over the total annuities paid to him or his survivor. A designated beneficiary of a member, by signed affidavit, may request that medical insurance premiums be paid from the member's account balance for a period not to exceed four (4) months after the death of the member or until a benefit option has been elected."

Section 9–3–426, W.S.1977:

"The benefits and allowances and the cash and securities in the account created by this act [§§ 9–3–401 through 9–3–435] are exempt from any state, county or municipal tax of this state, and are not subject to execution or attachment by trustee process or otherwise, in law or equity, or under any other process whatsoever, and are not assignable except as specifically provided in this act."

As discussed by Blumberg, supra, and other texts, an astronomical number of cases on this subject can be found from at least 46 states and the federal court system. The majority approach clearly supports the Brown rule that the nonvested expectancy can be included in marital division.[6] *Robert C.S. v. Barbara J.S.,* Del., 434 A.2d 383 (1981).

Furthermore, we theorize that retirement pay is a mode of employee compensation which is an earned and accruing property right upon each year of service, and must be viewed as a substitute for work life savings. Arguably, if a worker were not provided with retirement coverage, and were instead paid a higher salary which he in some part saved for retirement, those savings would be marital property. The opportunity cost of retirement fund contributions to the marriage partners is foregone savings.[7] Thus, that portion of retirement pay which is earned during coverture should be considered in any equitable division of the marital property.

■ We will not conclude as a matter of law that the trial court abused its discretion in its determination that the husband's retirement fund, whether vested or nonvested, constituted marital property subject to divisional consideration in the divorce decree. It has been stated numerous times that the trial court has great discretion in marital property settlement, and that a trial court's discretion will not be disturbed except on clear grounds where an error of law is committed by the court under the circumstances. *David v. David,* Wyo., 724 P.2d 1141 (1986); *Barney v. Barney,* supra, 705 P.2d 342.

## PROCESS FOR DIVISION

In *Brown,* supra, as the lead case, the trial court was given discretion in property settlement resolution for both vested and nonvested retirement interests to either determine a cash valuation at divorce to be numerically factored in the decision, or to arrange for division at withdrawal or retirement by either retained jurisdiction or formula allocation in the decree. In some jurisdictions the formula approach is generally followed, see, e.g., *Woodward v. Woodward,* Utah, 656 P.2d 431 (1982); in some the discretion alternative exists, as in *In re Marriage of Brown,* supra; and other states elect a divorce time conclusion by computation of then attributable values and consequent division through property adjustment or cash allocation. We adopt an alternative approach which reflects this state's predominant policy interest in the clear and timely finalization and severance of the marriage ties, *Grosskopf v. Grosskopf,* Wyo., 677 P.2d 814, 821 (1984), except where either minimal remaining maturity time might remain, *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975), or practical economics prohibit any divorce time distribution or economic division.

Wyoming state retirement benefits at any given time prior to actual retirement are composed of two aspects: contributions by or in the name of the employee, and contributions by the employment unit. The program is of the defined-benefit character.[8] *Johnson v. Johnson,* 131 Ariz. 38,

---

6. With state benefits involved, and subject to the nonassignability provision of state law, we do not consider any of the questions devolving from the supremacy issue as related to military retirement, railroad retirement, and other federally funded benefits. *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), superseded by Pub. Law 97–252, 96 Stat. 730, 10 U.S.C. 1408; *Allison v. Allison,* Tex.App., 690 S.W.2d 340 (1985). See Blumberg, supra, Appendix at 1299.

7. For an excellent discussion of these principles, see Blumberg, supra, 33 U.C.L.A. L.Rev. 1250.

8. Hardie, *Pay now or later: Alternatives in the disposition of retirement benefits on divorce,* California State Bar Journal, Vol. 53 No. 2, March/April 1978:

"'* * * [A] plan which provides for an individual account for each participant and for benefits based *solely* on the amount contributed to the partipant's account, and any income, expenses, gains and losses * * *.'" Id., fn. 13, quoting from IRC § 414(i).

"It is the defined benefit plan which raises significant valuation problems. Unlike the defined contribution plan, there is no individual account statement which provides the parties with the value of the plan at regular intervals. All we know is that if the employee stays alive and on the job until retirement, he

638 P.2d 705 (1981). The employee's share is vested and can be withdrawn at any time upon employment termination. On the issue of assignability, compare *McClung v. McClung,* Fla.App., 465 So.2d 637 (1985) with *In re Marriage of Hisquierdo,* 19 Cal.3d 613, 139 Cal.Rptr. 590, 566 P.2d 224 (1977), rev'd on other grounds, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). The employer's share as a portion of the contributed total for benefit computation may not be available in any form until retirement. Consequently, death or pre-retirement employment termination causes forfeiture of the employer's share as an expectancy value.

■ The problem faced by the trial court is divorce time valuation. Division of the vested portion causes less difficulty in relative computation unless cash availability status or equality formula cannot encompass this asset as a presently divisible numerical and economic determinate. No mechanical process for the valuation of the employer contribution as nonvested is possible with the indeterminate expectancy that exists. It is recognized that actuarial experts can apply some rules of probability as appropriate evidence, but any opinion conclusion is subject to the conjectural effect of employee exercised options. We specifically determine that the trial court is entitled to receive evidence and give valuative consideration to the nonvested employer's share of the state retirement program. *Stigall v. Stigall,* 151 Ind.App. 26, 277 N.E.2d 802 (1972). Obviously, age, work stability, length of service, likelihood of discharge, or voluntary pre-retirement work termination are all intangible factors to be considered in a generalized valuation of the present worth of future expectancy. No specific rule or arrangement can be made applicable for each individual case. *Robert C.S. v. Barbara J.S.,* supra. The

challenge to the district court is not dissimilar to guessing at what the inflation rate might be 15 years from now.

Unfortunately, the tangible, obvious decisional component which may exist in that the valuation and division of both the vested and nonvested shares at divorce time will usually involve a specific nondivisible, nonavailable asset. If the allocation for a present decision at divorce does result in an unattainable present or periodic future payment burden, the likely result is disaster, particularly so if child support or alimony payments may be lost as a practical expectability. The blood-and-turnip homily is axiomatic. *Ramsey v. Ramsey,* 76 Wyo. 188, 301 P.2d 377 (1956). Reasoned discretion and rational application remain the responsibility of the trial jurist. *Victor v. Victor,* 142 Vt. 126, 453 A.2d 1115 (1982).

" * * * [T]he distribution of property is not an exact science and does not always lend itself to a precise mathematical formula; all that is required is that such distribution be equitable." Id., 453 A.2d at 1117.

■ This court will follow generally the philosophy in the cases espousing the principle that the parties are benefited if the decision in the decree is as complete and determinative as possible. *Johnson v. Johnson,* supra, 638 P.2d 705. The caveat that is left as a matter of discretion with the court is the "as possible" criteria which leaves discretion where other answers are unavailable as a practical fact except for some use of a future formula method. We do not accept the view of some authority to be sustainable by Wyoming precedent or statute that a trial court's discretion continues so that the parties are subject to a redetermination of the fund's division as property settlement at the time the employment actually terminates or the employee

---

will be entitled to receive a specified monthly payment for the balance of his life.

"The problem with the defined benefit plan is this: what is the value, at present, of the right to receive an unknown number of monthly checks in the future? The answer becomes more complex when these questions are also asked: how can such a valuation be made when the employee may be fired before retirement, may change employers, or may die before retirement? Nevertheless, the defined benefit plan has a value at present, and it is capable of being valued just as any other asset in the community may be valued. * * *

"Defined benefit plans are valued by actuarially determining their present value." Id. at 108.

retires, either of which might not occur until death. *Johnson v. Johnson*, Wyo., 717 P.2d 335 (1986); *Paul v. Paul*, supra, 631 P.2d 1060; *Pavlica v. Pavlica*, Wyo., 587 P.2d 639 (1978). Cf. *In re Marriage of Brown*, supra, 544 P.2d 561. Consequently, the divorce decree decision on property settlement involving retirement benefits should be fixed and certain, although the contingencies upon which it may operate can be applicable in the proper case. *Kane v. Kane*, supra, 577 P.2d 172.

■ This conclusion also effectuates the tenet that a final award of property is a preferable modern substitute for alimony or any other remedy forcing a continuing relationship between the estranged parties. *Grosskopf*, supra, at 821; *Young v. Young*, Wyo., 472 P.2d 784 (1970). Property division at the time of divorce allows the parties to make a clean break, and allows each to go his or her separate way, starting anew with an uninhibited life.[9] It is fundamental that "divorce, insofar as possible, should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf v. Grosskopf*, supra, at 821. See also *Stevens v. Stevens*, 23 Ohio St.3d 115, 492 N.E.2d 131 (1986). It is equally true in cases not only invoking child support and alimony, that the goal can be deterred by practical impossibility. It is in the mediation of all of these factors that sound discretion is vested.

■ In application of these principles, we examine the formula approach applied by the trial court to the Douglas Broadhead school retirement account. Considering the present age of the parties, and the conjectural nature of future events where an adequate estate now exists for realistic division, we do not perceive a justification for the retirement time formula division. In any event, if a formula division of the character announced in this case is utilized, then it must be expanded to anticipate the possibility of termination and reinstate-

ment. See Annot., 94 A.L.R.3d 176, 183. The opportunity to terminate and then resume employment within a few days should not confer on the working spouse the right to cash out the other spouse at his or her single election. See *Berry v. Board of Retirement of Los Angeles County Retirement Association*, 23 Cal.App.3d 757, 100 Cal.Rptr. 549 (1972), for exclusion by death, or *Ball v. McDonnell Douglas Corp.*, 30 Cal.App.3d 624, 106 Cal.Rptr. 662 (1973) as a gamble of spouse's choice. At the same time, we can envision that the time from employment termination to reinstatement might be sufficiently extended so that the opportunity of the other spouse to resume a participating fund relationship is not justified by the practical interest of relational disengagement.

■ Considering the extent of the estate involved here, we find no uncontrollable reason for requiring a future allocation of the retirement fund. This is particularly indicated since the husband requested present division of the vested interest and has demonstrated implicitly at trial and explicitly on appeal that he was willing (if required) to undertake the additional burden of accounting for the reasonable value of the unvested expectancy. Our approach follows the carefully reasoned pathway in similar circumstances found in *Johnson v. Johnson*, supra, 638 P.2d 705, by the Arizona court. Verdene Broadhead is entitled to recognition in property settlement disposition of her interest in retirement now vested of $7,767.49, plus a reasoned valuation in present dollars of the nonvested increment whether to be distributed in decree by asset division or payable by installment as reason would dictate.

Given that this court cannot constitute itself as a court of first instance to divide property in divorce cases, we rely on the learned discretion of the trial court. *Paul v. Paul*, supra, 616 P.2d 707; *Merritt v. Merritt*, Wyo., 586 P.2d 550 (1978).

---

9. Not here involved, but noteworthy, is the case where the matured status is not significantly removed in time. In such a case, the continued detriment of forced relationship is minimized, and consequently a formula approach based upon a division-determined future result is less corrosive between the parties as compared with a continued unsettled relationship. See *Wilder v. Wilder*, supra.

" ' "Inasmuch as a trial court's judgment cannot be disturbed except on clear grounds, we have seldom interfered with the action of the trial courts and whenever we have done so we have interfered only to a very limited extent. It is readily seen that unless we adhere to that course we should be apt to have before this court a plethora of appeals in divorce cases involving a division of property and asking us to virtually constitute ourselves as a court of first instance to divide the property. We do not think that this is the function of this court." ' "
*Paul v. Paul,* supra, 616 P.2d at 713, quoting from *Boschetto v. Boschetto,* Wyo., 80 Wyo. 374, 343 P.2d 503, 506 (1959).

See also *Carpenter v. Carpenter,* Okla., 657 P.2d 646 (1983).

We vacate the property settlement award and remand the case to the trial court to reconsider and determine the marital property division aspects of the state retirement funds in a fashion consistent with this opinion.

Affirmed in part, reversed in part, and remanded to the trial court.