**Stacey Sue EBELING,**
**Appellant (Defendant),**

v.

**William Otto EBELING, Jr.,**
**Appellee (Plaintiff).**

**No. 89–76.**

Supreme Court of Wyoming.

Nov. 21, 1989.

Clay B. Jenkins of Badley & Rasmussen, Sheridan, for appellant.

Robert W. Connor, Jr., Sheridan, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

This is a divorce case. The wife, not being satisfied with the disposition of property made by the district court, raises the following issues:

"I. The district court abused its discretion in refusing to divide husband's pension plan.

"II. The district court's finding that husband's pension plan money was not available until he retired was unsupported by the evidence."

We affirm.

## FACTS

This case went to trial in January 1989. The resulting divorce decree awarded the wife primary custody of the parties' only child, a son; child support payments; a car; her personal property including furniture, dishes, and clothing; and $2,000 cash to be paid within one year. Husband received all the real estate he owned prior to the marriage; the mortgages on the real property; his personal property; his pension and profit sharing plan (hereinafter "pension plan"); and a pickup. Husband was also ordered to pay all of the debts of the marriage with the exception of wife's attorney fees, and to maintain health insurance coverage for the parties' son.

## DISCUSSION

While appellant's brief frames two issues, she advances a variety of arguments all related to her primary assertion that she should have received a specific share of the pension plan awarded to husband.

First, she contends that she received a disproportionately small share of the financial assets of the parties. Appellant presents selected evidence in an attempt to show that husband received three times as much property as wife.

Secondly, appellant contends that the actions of counsel "so annoyed the judge, and so taxed his patience, that he was unable to listen effectively." She appears to argue that this caused the judge to be prejudiced against her in making the property division. As support for this contention, she quotes selected statements made by the judge during the trial. When the statements are read in context, they do not show that the judge lost his ability to "listen effectively." To the contrary, they show that the judge was questioning the relevance of what he was listening to. The following example is illustrative:

"THE COURT: I don't know what you guys are arguing about, I mean, so go on. If it's something that's important, you better tell me about it. I don't know.

"MR. JENKINS: It's not important, your Honor.

"THE COURT: What's it all about?

"MR. CONNOR: Apparently he was served with a subpoena. He's here with the information, and Mr. Jenkins is trying to make an issue of it.

"THE COURT: Well, I don't understand the issue. The issue I'm concerned with is, you know, who should be the custodial parent and I could care less about the bickering."

These statements provide no evidence for a claim of bias or prejudice, and we do not discern any bias reflected in the decree itself or the remainder of the record.

Thirdly, appellant argues that the court made findings about the pension plan which were contrary to the evidence, resulting in an incorrect valuation. In support of this argument, appellant offers the following statements by the court:

"On the pension, the point that counsel for the plaintiff makes is appropriate. It might be a hundred percent vested, but he doesn't get it until he retires. I don't know whether it then comes in a lump sum or whether it is paid over the period of time.

"If you give somebody some money now, it should be given on the value of it now.

"Nobody gave me any testimony on the values, and I guess I just reach up here and grab it out of the air and decide it."

Appellant contends that this constituted a finding by the court that the pension plan money was not available to husband until he retired. This argument overlooks the subsequent exchange between appellant's counsel and the court:

"MR. JENKINS: Are you making a specific finding of fact that the pension and profit benefits are not paid until age fifty-eight and a half?

"THE COURT: *No, sir.* That is the evidence based upon the testimony given here. I am making a finding that he is entitled to that, and I am giving her two thousand dollars settlement on all of that.

"MR. JENKINS: The two thousand dollars is settlement for the pension plan?

"THE COURT: *No, it is for everything, Counsel.* I am taking all of this into consideration. The house is not worth, apparently, what is owed against it now. That is the way I settled it." (emphasis added)

Appellant's contention is incorrect. The court, after considering all of the evidence, decided to award the pension plan to the husband. It seems clear enough that the $2000 payment to the wife was intended to balance the equities of the whole property division between the parties, rather than specifically as compensation for the pension plan.

Finally, appellant asserts that the failure to divide the pension plan was an abuse of discretion, citing *Broadhead v. Broadhead,* 737 P.2d 731 (Wyo.1987), for the proposition that a pension plan is divisible in the event of divorce. Appellant heavily stresses the testimony which indicates that husband could have access to the money prior to retirement by employing the "simple artifice" of terminating his employment and

being rehired. She appears to argue that the possibility of husband obtaining the money before retirement somehow entitles her to a share of the money upon property division.

*Broadhead* held that a court which is making a property division in a divorce action may take into account the value of nonvested retirement benefits. 737 P.2d at 736. The decision also recognized the majority rule that retirement benefits earned during the marriage should be considered in the equitable division of the marital property. 737 P.2d at 737. *Broadhead* does not mandate the *division* of this property; rather, it identifies "property of the parties" which the court may dispose of pursuant to W.S. 20-2-114. In other words, retirement benefits earned during a marriage are property to be considered by the court in determining property disposition, but the court is not required to divide that particular property.

The decree itself shows that the court considered the pension plan as property of the parties. The record of the trial is replete with references which show that the district court was aware of the existence of the pension plan, and considered it along with the other property when determining the property distribution.

Custody, child support, insurance, division of property and other financial matters must be considered together when determining whether a property disposition is just and equitable. *Smith v. Smith*, 704 P.2d 1319 (Wyo.1985). Property awards must be viewed in their entirety and not considered on the basis of each item. *Barney v. Barney*, 705 P.2d 342 (Wyo.1985). Little purpose would be served by analyzing each asset in an attempt to calculate the precise financial effect of the decree. Financial equality is not a prerequisite of a just and equitable distribution. *Blanchard v. Blanchard*, 770 P.2d 227 (Wyo.1989). When a district court disposes of property under W.S. 20-2-114, it has great discretion to determine what is a just and equitable division, and the disposition will not be disturbed except on clear grounds. *Sellers v. Sellers*, 775 P.2d 1029 (Wyo. 1989). We have previously recognized that a fair and equitable property division may be achieved without division of retirement accounts. *Blanchard*, 770 P.2d at 229–230. Review of the complete record indicates that the actual financial impact of the decree is not as disparate as appellant contends but is fair and reasonable considering the total disposition of all the claims, property, assets and liabilities of the parties.

We find no basis for the claim of abuse of discretion.

Affirmed.