No. 85-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

IN RE THE MARRIAGE OF
RONALD KEITH HULL,

Petitioner and Appellant,

and

JANE ANN HANKS HULL,

Respondent and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Harrison, Loendorf & Poston; John P. Poston, Helena,
Montana

For Respondent:

Morrow, Sedivy & Bennett; Edmund P. Sedivy, Jr.,
Bozeman, Montana

Submitted on Briefs: Oct. 31, 1985

Decided: January 21, 1986

Filed: JAN 21 1986

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

In November 1983, the Gallatin County District Court entered a decree of dissolution of the marriage of Ronald K. Hull (husband) and Jane Ann Hanks Hull (wife). In February, 1985, the findings of fact, conclusions of law and judgment were entered with regard to property distribution, maintenance and support. The husband appeals. We affirm in part and reverse and remand in part.

The issues for review are:

1. Did the District Court erred in determining that goodwill of husband's sole professional anesthesiology practice is a marital asset subject to property division in a dissolution of marriage?

2. Did the District Court err in setting the value of the goodwill attributable to the husband's anesthesiology practice?

3. Did the District Court abuse its discretion in distributing the marital property without regard to a portion of the debt payable by husband?

The parties were married in 1971. At that time the husband had completed medical school at the University of Kansas and the wife had completed her training as an elementary teacher. During the next few years the husband was completing his residency training in several specialties, ending with anesthesiology. During the same time, the wife did some teaching but was unable to find full time teaching jobs in most places. In 1976, the parties moved to Alaska where the husband practiced private anesthesiology for one year. At that time the parties adopted the first of two children. The wife then became a full time mother. In 1977, the family moved to Bozeman so that the husband could begin the practice of anesthesiology. Since that date the husband has been doing business as a professional corporation,

2

working in a co-operative arrangement with two other anesthesiologists in sharing an office. These three doctors perform anesthesiology in Bozeman Deaconess Hospital on a basis whereby they set up their own schedules and rotate the patients as they require services. Essentially these three have a monopoly on the anesthesiology practice in Bozeman, as the only other person giving anesthetics is a general practitioner who does not work nights. The husband's practice is based in the hospital and he does not follow-up or see patients in an office. The anesthesiologist is normally assigned to a patient by room number and neither the surgeon nor the patient normally select the anesthesiologist.

During 1982, and immediately prior to the parties' divorce, the three anesthesiologists each earned approximately the same annual net income, being something over $130,000. This net income figure includes their respective contributions to their own pension plans. In 1982 the husband received $104,085 net salary and contributed 25% of his gross salary, $26,021.29 to his pension plan. During each of the past five years, the husband's salary has increased.

At the time of the divorce, the husband was 39 and the wife was 37 years of age. Since residing in Montana the wife has pursued a master's degree in counseling and is seeking to obtain certification as a drug and alcohol counselor. She testified that she was interested in obtaining a Ph.D. in clinical psychology and counseling.

During the marriage the parties acquired a substantial amount of property. Because of the nature of the issues, we will set forth the description of the assets and the values fixed by the District Court:

3

## NET ASSETS TO WIFE

| | |
|---|---:|
| Cash value - N.W. Mutual Life Insurance | $ 10,122.00 |
| Pension profits sharing plan | 7,683.15 |
| Cash on hand | 15,000.00 |
| House | 20,634.00 |
| Silver | 7,200.00 |
| Dodge car | 6,000.00 |
| Furniture | 5,000.00 |
| Sapphire ring | 750.00 |
| Trailer | 1,300.00 |
| Alaska land | 27,500.00 |
| Pay mortgage on house | 52,216.00 |
| Interest in profit sharing plan | 53,775.00 |
| Gun | 100.00 |
| TOTAL | $212,280.15 |

## NET ASSETS TO HUSBAND

| | |
|---|---:|
| Ranch | $ 57,339.00 |
| Heifers | 487.00 |
| Farm equipment | 1,532.00 |
| Tools | 1,000.00 |
| Furniture | 2,000.00 |
| 1977 Subaru | 1,700.00 |
| Corporation book value | 136,410.00 |
| Pension profit sharing plan | 58,775.00 |
| Cash on hand | 9,090.00 |
| Equitable policies - cash value | 3,872.00 |
| SUBTOTAL | $272,205.00 |
| Less mortgage indebtedness to be paid by Petitioner [mortgage debt on house distributed to wife] | 52,216.00 |
| TOTAL | $219,989.00 |

As pointed out by the District Court, the real bone of contention was the assignment of goodwill to the individually owned corporate practice of the husband. The wife called as her expert witness a CPA who valued husband's professional corporation. He valued the net physical assets at $33,000, which was the figure furnished by the accountant for the husband, so there is no dispute as to that amount. In addition, the wife's CPA assigned a going concern or goodwill value to the professional corporation of $103,410. These two figures together make the $136,410 listed as corporation book value on the District Court list of net assets distributed. Husband contends that no goodwill or going concern value should have been assigned.

4

I

Did the District Court err in determining that goodwill of husband's sole professional anesthesiology practice is a marital asset subject to property division in a dissolution of marriage?

No Montana cases have specifically addressed the issue of goodwill in a professional medical practice. The District Court set forth a memorandum of authorities upon which it based its conclusion. We substantially agree with the holdings on the part of the District Court. The District Court pointed out that in Cromwell v. Cromwell (1977), 174 Mont. 356, 570 P.2d 1129, this Court held that there must be recognition given to the most valuable asset of the marriage, that being the job, education and training of Mr. Cromwell. At most this could be interpreted as an implication of the recognition of goodwill of a professional practice.

In the 1973 annotation entitled Accountability for Goodwill of Professional Practice in Actions Arising from Divorce or Separation, 52 A.L.R.3d 1344, we find limited authority. Starting in 1956 a few California cases recognized the accountability for goodwill of a professional practice in actions arising from a divorce. On the other hand, Texas refused to recognize goodwill of a medical practice for divorce purposes. However, the annotations subsequent to the original article suggest that a majority of the courts are assigning goodwill to professional practices. The District Court found Matter of Marriage of Fleege (Wash. 1979), 588 P.2d 1136, to be well-reasoned authority which was adopted by the District Court. In Fleege, the husband was a dentist whose expert testified that he had never known of a dentist selling his practice and including a factor of goodwill. In opposition, the wife produced testimony of two certified public accountants who served clients in medical and dental

5

professions and who testified that the value of a dental practice included a goodwill factor, which had a present value. These CPA's testified that the dentists' net profits exceeded the average practitioner by $50,000 and gave an opinion that the value of the goodwill would be equal to gross receipts over a two or three month period. Additional testimony was given to suggest a total valuation of the practice, counting tangible property and goodwill, of $200,000. In reversing the lower court and remanding the cause for a determination of the value of the goodwill of the dental practice as it existed on the date of dissolution, taking into account the testimony of experts and other factors, the Fleege court made the following statements:

Goodwill is property of an intangible nature and is commonly defined as the expectation of continued public patronage. [cases cited] Among the elements which engender goodwill are continuity of name, location, reputation for honest and fair dealing, and individual talent and ability. [case cited]

. . . while the goodwill of a professional practice may not be readily marketable and the determination of its exact value may be difficult, that element may nevertheless be found to exist in a given professional practice. The determination of its value can be reached with the aid of expert testimony and by consideration of such factors as the practitioner's age, health, past earning power, reputation in the community for judgment, skill, and knowledge, and his comparative professional success.

. . . In sustaining a judgment adopting that value, the California appellate court said:

The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant [upon] a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage. As observed in Golden [v. Golden, 270 Cal.App.2d 401, 75 Cal.Rptr. 735 (1969)], ". . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as

6

it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business." (270 Cal.App.2d 401, 405, 75 Cal.Rptr. 735.)

(Footnote omitted.) In re Marriage of Foster, supra, 42 Cal.App.3d at 584, 117 Cal.Rptr. at 53.

. . . While there have been a number of courts which have refused to assign a value to the goodwill of a professional practice in a divorce proceeding, the modern tendency is to acknowledge the economic facts and take such goodwill into account. [cases omitted]

. . . The value of goodwill to the professional spouse, enabling him to continue to enjoy the patronage engendered by that goodwill, constitutes a community asset and should be considered by the court in distributing the community property. That value is real, and the mere fact that it cannot be precisely determined should not deter the court from assigning it a reasonable value within the evidence.

While Montana is not a community property state as are the states of Washington and California, the principles are applicable under the provision of § 40-4-202, MCA, which requires a consideration of a multitude of factors, including the opportunity of each of the parties for future acquisition of capital assets and income.

We adopt the analysis of the Washington court in Fleege. We hold that the goodwill of a professional anesthesiology practice may be a marital asset subject to property division in a marriage dissolution.

II

Did the District Court err in setting the value of the goodwill attributable to the husband's anesthesiology practice?

The husband contends that it was improper to assign any dollar value to the goodwill of his anesthesiology practice. He presented testimony by his own accountant and by the two

anesthesiologists with whom he is associated in order to substantiate the absence of value in a goodwill sense.

In opposition, the wife presented the testimony of a CPA residing in Bozeman who specializes in valuing businesses. Because of the strong insistence that goodwill has no value, and in order to afford some guidance in other cases, we will analyze the testimony of the wife's CPA at some length.

Mr. Ness, the wife's CPA, submitted a written report showing the basis for his valuation, pointing out that he had no interest, present or contemplated, in the corporation, and that he made the valuation for use in arriving at a property settlement in the pending divorce. The pertinent portion of the testimony and report of Mr. Ness may be summarized as follows:

Mr. Ness in his practice as a CPA does not do a great deal of tax work but does business evaluation type work, including extensive work with colleges and universities in regard to financing. In making his evaluation he first sought authoritative sources from professional organizations such as the Institute of Business Appraisers. He quoted the following from a work published by the American Medical Association in 1981 entitled Valuing A Medical Practice - A Short Guide For Buyers and Sellers:

> For the last 25 years medical practices were rarely bought or sold. The reason was simple: physician demand had exceeded physician supply. A new doctor merely opened a practice and patients soon arrived.

> Now there is a growing market for medical practices, spurred by the rapid increase in the number of physicians, which is far outpacing the growth in U.S. population. Because it sometimes is harder and takes longer to build a new practice today, buying an existing one again is becoming attractive to some new doctors.

He quoted from other authorities, including a Texas dental journal which pointed out that in the dental area, the advantage of buying an existing practice, even including a

8

payment for goodwill, was becoming greater. Mr. Ness reached the conclusion that the desirability of living in Bozeman, coupled with the limited market available, logically imply that the anesthesiology practice in Bozeman could have significant value in excess of physical assets.

Mr. Ness found in various resource works that the general approach was that a goodwill value does attach to a medical practice. However, he did not find any widely accepted formula for valuing a medical practice. He did point out that during the past 10 years, an organization had been started which specializes exclusively in the sale of medical practices and that such organization advertises extensively in the American Medical Association Journal. In addition, the journal and other American Medical Association publications contain numerous ads for sale and purchase of medical practices across the country. In discussing the nature of the valuation, Mr. Ness considered the adverse effect of the limited population in the Bozeman area, and also considered the positive effect of living in the Gallatin Valley, which generally is a desirable place to live.

In order to demonstrate the presence or absence of goodwill, he then analyzed the earning powers of the husband as compared to other medical doctors in the same profession. He used a publication entitled Profile of Medical Practice published in 1981 by the American Medical Association. That publication showed that the 1979 average net income including retirement benefits, for anesthesiologists in the area of Montana, Idaho, Wyoming, Nevada, Utah, Colorado, Arizona and New Mexico was $62,000. It also contained a table which showed the percentages of that $62,000 figure which were earned by anesthesiologists in different age brackets from under age 35 up to age 61 and over. Using that $62,000 figure, and applying an age factor for an anesthesiologist

9

under 35 years of age, Mr. Ness concluded that the 1979 income to be expected was $58,336. Then using the July 1983 consumer price index factor for medical care as published by the Council of Economic Advisors, he concluded that income for 1983 would have increased to $87,224. He compared that $87,224 to the $130,106 earned by the husband and concluded that the $42,882 difference was a going concern value above the normal expected income. He concluded that the goodwill value for one year therefore was $42,882. He adjusted this for the projected normal increase in the next five years so that the remaining excess net income attributable to goodwill was $41,364. He then considered a capitalization rate to be applied. He testified that the Internal Revenue Service regulations contained the current authoritative rulings on capitalization rates for determination of goodwill. Those regulations show between 15 and 20 percent as a proper capitalization rate. He concluded that under all of the circumstances he would be more conservative and use a 40% rate. He then divided $41,364 by the 40% capitalization rate to arrive at the going concern or goodwill value of $103,410. He testified that in his opinion the value of the husband's professional practice was a total of $136,410, which included the $103,410 for going concern or goodwill value. In explaining his setting of the capitalization rate at a much more conservative rate than the IRS regulations, Mr. Ness pointed out that this was a different type of practice in which repeat business was not present as would be true with an ordinary medical practice. As a result he thought a very conservative capitalization was appropriate and testified that 40% was such a rate.

The husband argues that we should pay more attention to the testimony of the two anesthesiologists who practice with the husband and to his own accountant rather than adopting

10

the viewpoint of the CPA who was hired for analysis purposes by the wife. That is not our function on appeal. We conclude that the Ness analysis is understandable and reasonable and has considered the various factors which we have approved in our adoption of the Fleege analysis. We conclude that the evidence submitted by the wife through CPA Ness is understandable, substantial in nature, and reasonable.

We hold that the District Court did not commit error in assigning the value it did to the goodwill attributable to husband's anesthesiology practice.

III

Did the District Court abuse its discretion in distributing the marital property without regard to a portion of the debt payable by husband?

The District Court in its finding of fact valued the pension and profit sharing plan of the husband at a total of $117,550. As appears from the list of net assets distributed to wife and husband, a one-half interest or $58,775 in the pension profit sharing plan was distributed to the wife and a similar amount to the husband. In its findings of fact the District Court recognized that $55,000 had been borrowed from the pension and profit sharing fund by the husband and applied toward the purchase of the ranch, which was distributed to the husband at a net asset value of $57,339. The wife argues that either the ranch net asset value or the pension profit sharing plan net asset value must be reduced by the $55,000 which petitioner has to pay. That contention appears reasonable under the facts of the case.

As appears from the net asset value list for distribution to the wife and to the husband, the court apparently considered these as "net" value figures to each because it deducted the residence mortgage indebtedness which

11

was to be paid by the husband in the amount of $52,216 from his net asset valuation to result in a total valuation for net asset distribution to him of $219,989.

We are unable to determine from the record if the District Court made a mistake of $55,000 in the amount of net assets distributed to the husband. We recognize that the District Court had the discretion to award $219,989 in value less the $55,000 debt owing, to the husband if it chose to do so. However, the record does not clearly show that to have been the intent of the District Court.

We therefore remand the cause to the District Court for its redetermination of the portion of the net assets to go to the husband as compared to the wife, taking into consideration the $55,000 obligation owing by the husband to the pension and profit sharing plan.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____,
Justices

12