**Charles Richard NEUMAN, a/k/a Dick Neuman, Appellant (Plaintiff),**

v.

**Gretchen Ann NEUMAN, Appellee (Defendant).**

**No. 91–99.**

Supreme Court of Wyoming.

Nov. 30, 1992.

David E. Erickson, Brown Erickson & Hiser, Rawlins, for appellant.

Richard G. Miller, Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

THOMAS, Justice.

All of the questions raised in this appeal relate to the exercise of discretion by the trial court in effecting a division of marital property in a divorce action. The primary issue concerns the method adopted for determining the value of stock in a closely-held family corporation. Other allegations of error concern a variance between the decree entered by the trial court and the parties' stipulations; the failure of the trial court to consider tax liabilities and early withdrawal penalties in valuing retirement accounts; and the failure of the trial court to take into account a right of contribution from cotenants in determining the value of

---

* Chief Justice at time of oral argument.

the wife's interest in real property held by her in joint tenancy with others. We hold there was no abuse of discretion on the part of the trial court with respect to any valuations. We do modify the decree of divorce to increase the value of the residence awarded to the wife to its stipulated value and, after that adjustment, we further modify the decree by abolishing periodic payments obviously designed by the trial court to effect an equal distribution. As modified, we affirm the decree of divorce entered by the trial court.

Charles Richard Neuman (the husband) raises the following issues in expressing his dissatisfaction with the property division made by the district court:

I. Did the trial court abuse its discretion by making findings of fact and conclusions of law at variance with the parties' stipulations?

II. Did the trial court abuse its discretion under the particular facts and circumstances of this case by failing to consider tax liabilities and early withdrawal penalties when determining the value of the parties' individual retirement accounts?

III. Did the trial court abuse its discretion by failing to consider appellee's right to contribution from her cotenants when determining the value of her interests in a joint tenancy?

IV. Did the trial court properly determine the value of appellant's closely held stock?

Gretchen Ann Neuman (the wife) offers this statement of the issues in arguing to sustain the property division made by the trial court:

1. Was the trial court's division of property when viewed on an overall basis an abuse of discretion?

2. Was the trial court's valuation of appellee's joint tenancy an abuse of discretion?

3. Did the trial court err as a matter of law and abuse its discretion when it accepted appellee's expert's valuation of appellant's stock?

The husband, by his reply brief, summarizes the case in this way:

V. Is the trial court's property settlement fair and equitable when judged on an overall basis under the particular facts and circumstances of this case?

The Neumans were married on June 7, 1980, in Saratoga. By December of 1989, irreconcilable differences had arisen between them and, following a year of separation, the husband filed for a divorce on May 24, 1990. The wife filed an answer and a counterclaim in which she sought a decree of divorce, custody of their daughter, child support, and an equitable division of their properties. The trial was held on January 4, 1991, with the only matter in dispute before the court being the value, and the appropriate division, of the parties' property. Other issues including custody of their daughter, child support, medical expenses, and visitation of the daughter generally were not in dispute because they had been resolved by stipulations.

The husband and wife each brought substantial assets into the marriage. At that time, the husband owned a house in Rawlins, which was worth approximately $57,000, and approximately seventeen shares of Phelps–Dodge stock, a gift from his father in 1979. The wife owned an 85% interest in a cabin and lot near Moran Junction; a Merrill Lynch cash money market account; and interests in two real estate investment companies known as JMB Properties. The wife's property had been acquired with proceeds that she received from a personal injury settlement in 1974.

Before they were married, the husband and wife purchased three acres of land in the Aspen Highlands Development near Elk Mountain. During the time they were married, the Neumans purchased an additional home with the proceeds of the sale of the home owned by the husband prior to the marriage, and they acquired certificates of deposit (CDs), individual retirement accounts (IRAs), life insurance, a vehicle, household furnishings, and a significant amount of cash. The husband worked in his family's trucking business, as service manager, during the ten years of the marriage. The wife was employed as a teacher at Carbon County Child Development Center for the first two years of the marriage,

but she was not employed after their daughter was born.

The Neumans had an outstanding mortgage on their home of $14,000 but, otherwise, they were free of debt. The husband held eighty-four shares of stock in Neuman Transit Company, Inc. (Neuman Transit), a closely-held corporation owned entirely by the Neuman family. He received sixty of those shares as gifts from his father in 1981, 1982, and 1983, and the other twenty-four shares were distributed to him in settlement of his grandmother's estate in 1988. The trial court found that the value of the husband's shares in Neuman Transit was $188,943.

The decree of divorce in this case was filed on March 7, 1991. The district court found a just and equitable division of the property to be as follows:

| ASSETS | MR. NEUMAN | MRS. NEUMAN |
| --- | --- | --- |
| Family home in Rawlins | | $ 76,000.00 |
| 3 acres on Elk Mountain | $ 9,000.00 | |
| Household furnishings | | 8,790.00 |
| 1984 Wagoneer | | 4,425.00 |
| IRAs | 28,600.00 | 2,597.21 |
| Hungry 5 | 4,463.60 | |
| JMB | | 5,270.00 |
| Cash value of life insurance | 11,608.44 | |
| Ginnie Mae account | | 5,400.00 |
| Savings | | 1,900.00 |
| CDs | | 14,520.58 |
| Neuman Transit stock | 188,943.00 | |
| Phelps–Dodge stock | 1,000.00 | |
| Merrill Lynch | | 44,430.00 |
| 3 horses | 2,200.00 | |
| Loan to Kevin | 2,000.00 | |
| Teton County home | | 61,666.00 |
| | $247,815.04 | $224,998.79 |

| LIABILITIES | MR. NEUMAN | MRS. NEUMAN |
| --- | --- | --- |
| Appraisals for trial | 620.00 | 620.00 |
| Mortgage on family home | 14,000.00 | |
| | $233,195.04 | $224,378.79 |

As an additional settlement of their property, the husband was ordered to pay the wife the sum of $367.34 per month for twenty-four months. That amount comes within pennies of the disparity between the value of the property according to the decree. Each party was to bear their own attorney fees and costs.

The major issue in this case with respect to the property division is over the valuation of the stock in Neuman Transit. In addressing the husband's claim that the property division was not just and equitable and, therefore, must be held to be an abuse of the trial court's discretion, we look both to the statute and prior cases. The controlling statute in this case, Wyo. Stat. § 20–2–114 (1987), provides, in pertinent part:

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

In prior cases, we have held repeatedly that the division of marital property is within the discretion of the trial court and, in the absence of a manifest abuse of that discretion, we will not disturb the result. *Mair v. Mair*, 823 P.2d 538 (Wyo.

1992) (citing *Williams v. Williams,* 817 P.2d 884 (Wyo.1991), and *Blanchard v. Blanchard,* 770 P.2d 227 (Wyo.1989)). An abuse of discretion is to be found in a result that shocks the conscience of the court and appears so unfair and inequitable that reasonable persons could not abide it. *Grosskopf v. Grosskopf,* 677 P.2d 814 (Wyo.1984) (citing *Paul v. Paul,* 616 P.2d 707 (Wyo.1980), and *Kane v. Kane,* 577 P.2d 172 (Wyo.1978)). In evaluating the question of whether a property division by the trial court is, in fact, just and equitable, we must analyze the situation from the perspective of the overall distribution of the marital assets and liabilities, rather than focusing narrowly on the effects of disposition of any one particular asset. *Overcast v. Overcast,* 780 P.2d 1371 (Wyo. 1989) (citing *Klatt v. Klatt,* 654 P.2d 733 (Wyo.1982), and *Paul* )). We also apply the usual rule that, on appeal, we view the evidence favorably to the successful party in the trial court, ignoring the evidence of the unsuccessful party, and affording to the successful party every reasonable inference that can be drawn from the evidence in the record. *Kennedy v. Kennedy,* 761 P.2d 995 (Wyo.1988) (citing *Grosskopf* ).

The major dispute in this case is over the method adopted by the trial court for valuing stock in Neuman Transit. Each of the parties presented an expert witness at trial to testify as to the value of the husband's stock. Pursuant to a stipulation of counsel, the trial court took the testimony of the experts in narrative form. Each of the experts offered an opinion; explained the approach utilized to arrive at his opinion; articulated the reason for selecting the approach utilized; and elaborated generally upon the reasons for the offered opinion.

The chairman of the accounting department of the University of Wyoming was called by the husband to provide an academic and theoretical guide. That witness agreed that the three primary methods of valuation of closely-held stock are book value, capitalization of earnings, and historical earnings. Later, he testified that the comparable sales approach was a fourth method by which stock of this type commonly is valued. This witness furnished an explanation of each of the various methods of valuation.

Book value is arrived at by taking the aggregate equity of the stockholders in the company and dividing it by the number of outstanding shares. In the capitalization of earnings method, the appraiser uses the average of an accumulation of earnings, normally at least two years, and then discounts the average earnings and multiplies that by an appropriate capitalization factor. IRS Revenue Ruling 59–60 suggests the appropriate capitalization factor be somewhere between twenty and thirty. The historic earnings method represents an attempt to adjust, by price level adjustment, the historical cost statements for earnings power over the life of the entity. When asked about the comparable sales approach used by another expert witness, the Chairman of the Accounting Department said:

> Well, comparable sales is probably most difficult with a closely-held corporation, you understand. Because there might not be a comparable sale of a closely-held entity.
>
> So what we normally—and let me broach the subject in this fashion—normally we talk about comparable sales when we are talking about the sales of stock that are on an exchange, and we can look at those kinds of comparable companies.

This witness also said that, in valuing a closed-corporation interest in a transportation company, it sometimes is proper to compare assets, liabilities, and interests to a publicly-traded transportation company. This approach is known as common sizing. The witness discussed the advantages and disadvantages of each of the methods of valuation, concluding that to discount an average earnings figure and then capitalize that rate would most consistently achieve the most accurate results.

The valuation expert for the husband, a certified public accountant, testified utilizing a comparable sales approach and then taking a 35% discount for lack of marketability of the Neuman Transit stock, ending with an opinion of a net value of $69,058. This witness also used, as a second ap-

proach, the common-sizing approach pursuant to which he compared Neuman Transit with Consolidated Freightways and Yellow Freight Company, both publicly traded stocks and, after a discount of 35% plus an additional 39% discount for a loss of business within the last two weeks, he arrived at a net value of $73,904. The husband's witness also testified that the book value of the husband's interest in the stock minus the minority discount was $45,136. The trial court found that the testimony relating to a comparable sale was not reflective of the actual value of the stock in Neuman Transit. Similarly, the trial court ruled that the evidence of book value did not accurately reflect actual or market value because of the practice of maintaining its equipment rather than replacing it. The trial court also noted that using the husband's expert witness' computation for the price earnings ratio after netting out a 39% reduction for an anticipated loss of gross earnings and a 35% reduction for a minority interest resulted in a value of $189,908.43, a value slightly higher than the one the court adopted from the testimony of the wife's expert witness.

The wife called as her expert a witness who also was a certified public accountant and testified utilizing the capitalization of earnings approach. The wife's expert computed the capitalization of earnings based on Neuman Transit's own records for the past ten years. He then adjusted the value of the rolling stock which was almost totally depreciated and arrived at a net value of $188,943. This witness offered a second valuation pursuant to a modified book value approach. The wife, in her brief, referred to this as a "liquidation value," and the opinion of the expert, based on this latter method, resulted in a net value of $247,330. The wife's witness did not apply a discount for the lack of marketability, nor did he adjust for the very recent loss of business in reaching either of his proposed figures. Neuman Transit was dealing with a $2 million loss of revenue which, according to the wife's witness, would cause the company to not reach a break-even profit. The witness testified that, if the company were to reach a break-even point, then it would either liquidate or it would go out and find new sources of revenue to offset the loss of revenue. It followed, in the opinion of the wife's expert, that the 39% reduction for loss of business proposed by the husband's expert was inappropriate. The wife's expert also testified that the 35% minority discount for the lack of marketability the husband's expert proposed was not applicable in this instance, since it was a divorce case, and the husband was not going to sell his shares of stock.

The trial court adopted the capitalization of earnings approach used by the wife's expert witness and then valued the husband's stock at $188,943. The husband challenges the adoption by the court of the approach of the wife's expert claiming that the witness' methods are not in accordance with general accounting principles. Specifically, the husband states in his brief:

> As will be shown, the trial court's findings of fact and conclusions of law regarding the valuation of the stock are so at variance with accepted accounting procedures and the law as it exists in our sister states that this court simply will not be able to abide them. As a result, this appeal offers this court the opportunity to decide how stock in a closely held corporation should be properly valued in divorce actions.

While forcefully stated, we are not in accord with the husband's argument. As we have noted above, the trial court is afforded substantial deference in the determination of a just and equitable disposition of the properties of the parties in a divorce case. In addition, the precedent and theories offered by both the husband and the wife, in their briefs and arguments together with the literature that has been developed by independent research, reveal numerous methods and factors courts may consider in arriving at a determination of the value of corporate stock.

The challenge by the husband is to both the methodology and certain assumptions relied upon by the wife's expert and later adopted by the district court to calculate the earnings of Neuman Transit. We have selected a relatively recent article as a lucid

and concise summary of this problem and the various solutions. Alan S. Zipp, *Divorce Valuation of Business Interests: A Capitalization of Earnings Approach,* XXIII Fam.L.Q. 89 (1989). Mr. Zipp recognizes that the valuation of a closely-held business is among the more difficult problems in divorce cases, and courts can only expect a reasonable estimate of business value based upon expert testimony. The author then makes the distinction between the valuation of a business for divorce purposes and its value to a willing buyer, primarily because there is no willing buyer in the divorce, and the business will not be sold. In addition, a willing buyer is contemplating future profitability and earnings in the future when making a valuation decision while, in the divorce case, the post-divorce earnings are considered property outside the scope of the rules for distribution of marital property. The legal concept of marital property recognizes the business value as it exists at the date of divorce or separation, and income to be earned after the divorce is not part of that marital property. The capitalization of earnings approach to the valuation of stock in such cases is supported by the Zipp article.

■ In this case, we are persuaded that the capitalization of earnings approach utilized by the wife's expert witness, and its adoption by the district court, does not result in an abuse of discretion as the husband argues. The wife's expert expressed his preferential method for valuing a company like Neuman Transit, which has a significant investment. That preferred method is to value the underlying assets, and then apply a calculation to account for goodwill if there is any goodwill. For our purposes, goodwill appropriately is defined as:

> Business goodwill for marital property valuation purposes is the reasonable value, in the hands of the current business owner, of the average excess earnings of the business, at the valuation date, based exclusively on the historical earnings of the business and without reference to projected future earnings.

Zipp, *supra,* at 108.

The wife's expert applied a 15% capitalization rate, which is generally one way of valuing goodwill. The capitalization rate of 15% that the witness used is not challenged by the husband on appeal.

Before the wife's expert applied the 15% capitalization rate, he determined the value of the company's equipment by examining ten years of Neuman Transit's records. He next estimated the actual depreciation of the equipment during the ten-year period and applied this to taxable income and reached a result denominated "Adjusted Net Cash Flow" for each of the ten years. An average for the ten years then was obtained by giving more weight to the net cash flow that was generated in the last five years as opposed to the first five years. The expert witness then subtracted the actual depreciation from the net cash flow and arrived at the profit from operations, from which he subtracted 30% for income taxes, arriving at the average annual after-tax earnings. He then applied the 15% capitalization rate to reach his final valuation of the husband's shares of stock in the amount of $188,943.

■ A method of valuation that capitalizes the historical past earnings of a business at an appropriate capitalization rate, in order to identify the value of any goodwill possessed by the business at the date of divorce or separation, is appropriate in the context of divorce proceedings because it avoids the problem of valuing a business on the basis of post-divorce earnings and profits. Zipp, *supra.* This method essentially is the approach that the wife's expert took in reaching his opinion as to value of the Neuman Transit stock, and his approach ultimately was adopted by the trial court. The court considered and evaluated the opinions of both experts. The deliberate nature of this consideration by the trial court is manifest by the nearly five pages of explanation contained in the findings of fact in the decree of divorce.

> A trial court is free to assess expert opinion and determine fair market value in light of testimony regarding: the nature of the business, the corporation's fixed and liquid assets at the

actual or book value, the corporation's net worth, the marketability of the shares, past earnings or losses and future earning potential.

*Bryan v. Bryan*, 222 Neb. 180, 382 N.W.2d 603, 606 (1986) (citing *Dean v. Dean*, 87 Wis.2d 854, 275 N.W.2d 902, 912 (1979)).

We accept and agree with the reasoning of the Nebraska and Wisconsin Supreme Courts. The trial court is not required to accept any one accounting method of stock valuation as more accurate than another.

The husband agrees that the capitalization of earnings method is a recognized and accepted valuation technique and even that it perhaps is the most widely-used technique for appraising and evaluating on-going businesses. This acknowledgement is in accord with the decision of the trial court as well as recent accounting literature and case law. The husband insists, however, that the trial court cannot ignore the recent 35% reduction in Neuman Transit's gross revenue. The trial court considered that factor in its findings of fact in the divorce decree and said:

> While there was testimony that the Company was going to suffer a 39% reduction in gross revenue as a result of events which had occurred two weeks prior to trial, the Court finds that any such reduction in value based thereon would be speculative and inequitable, considering the age of the Company, the past history of the earnings and the undisputed testimony that the Company was not going out of business, would continue to be in business at least until 2014. Further, a 39% reduction of gross revenue would not be a direct proportional reduction of net income as proposed by plaintiff's expert; but, instead, would cause the Company to not reach break-even point, and liquidation value, or the adjusted net book value, would be more appropriate.

This comment demonstrates that the trial court did not ignore the reduction in gross revenue. The court considered that factor, with all of the circumstances surrounding the case, and concluded that it would be speculative and inequitable to reduce the value accordingly. The approach taken is within the wide discretion afforded the trial court in the area of disposition of marital property, and we hold there was no abuse of discretion by the trial court in the valuation it made of the husband's shares of stock in Neuman Transit.

We emphasize that we do not adopt the capitalization of earnings approach as the only method to value corporate stock. Trial courts should continue to adjudicate marital property dispositions on a case-by-case basis. If we were to adopt a single bright-line method for evaluation of closely-held corporate stock, we would unnecessarily inhibit the invocation by trial courts of methods developed in the future for valuation of stock in a closely-held corporation. Furthermore, we would inhibit other methods that might be appropriate in a particular case. An examination of the literature in this area discloses that the choice of methods for valuing closely-held corporate stock has changed greatly in the past fifteen years,[1] and the capitalization of earnings approach that is the most commonly used method at this time will not necessarily be the method of choice in the future. Certainly, valuation of closely-held corporate stock will remain a battle of the experts, but those witnesses are probably in the best position to keep both counsel for the litigants and the courts current with respect to this troublesome topic.

 Other allegations of error presented by the husband include a variance between the decree of divorce entered by the trial court and the stipulations of the parties; the failure of the trial court to consider tax liabilities and early withdrawal penalties in connection with certain retirement accounts; and the failure of the trial court to consider a right of the wife to contribution from cotenants in its determination of the value of the wife's interest in

1. *E.g.*, W. Terrance Schreier & O. Maurice Joy, *Judicial Valuation of "Close" Corporation Stock: Alice in Wonderland Revisited*, 31 Okla.L.Rev. 853 (1978); MARJORIE A. O'CONNELL, GUIDE TO DIVORCE TAXATION § 12,104 (1987).

certain property held by her in joint tenancy with others. This court has remained steadfast in holding that property awards must be viewed in their entirety and not considered on the basis of individual items. *Ebeling v. Ebeling*, 782 P.2d 584 (Wyo. 1989) (citing *Barney v. Barney*, 705 P.2d 342 (Wyo.1985)). In light of that rule, little purpose would be served in this case by analyzing the individual assets in any attempt to calculate the precise financial effect of the divorce decree. Financial equality is not a prerequisite of a just and equitable distribution. *Ebeling* (citing *Blanchard*, 770 P.2d 227). The district court has great discretion under § 20–2–114 in making disposition of marital property to determine what is a just and equitable division. We hold that the trial court did not abuse its discretion in making the division of property in this case. In a reply brief, the husband asks this court to limit its review to a determination of whether substantial equality actually has been achieved by the trial court's division of marital estate. We are of the opinion that substantial equality was achieved.

 We turn now to an area that we believe does demand further consideration. The decree of divorce must be modified because of an error that occurred in the valuation of the Rawlins home. As noted previously, it was valued at $76,000, and there was a mortgage of $14,000 on the home chargeable to the husband. The husband, in his reply brief, asserts that, even though the trial court's judgment is entitled to great deference, the appellate court should not defer to valuation errors that affect the essence of the property settlement. We are in accord. The correct value that should be attributable to the wife with respect to the family home should be the stipulated fair market value of $90,000.

The husband gains support for his argument from the Supreme Court of South Dakota in *Warne v. Warne*, 360 N.W.2d 510 (S.D.1984). In *Warne*, the trial court allocated a mortgage on a house to the wife as an asset and to the husband as a debt. The purchase price of the house was $40,000 with $36,000 remaining unpaid.

The trial court valued the home at $40,000 and awarded it to the wife debt-free, which required allocation of the $36,000 debt to the husband. Upon appeal by the husband, the South Dakota court held that the court did not overlook the mortgage nor fail to properly account for it. In the context of this case, the point of *Warne* is that the court did not award the wife only the equity in the house which was $4,000, but the full value of the house which was $40,000. The rationale articulated by the South Dakota court is persuasive:

This Court limits its review to determine whether there was an equitable division of property. The trial court has broad discretion in dividing property. Error does occur, however, when the trial court fails to properly value assets and thereby establishes a false net worth.

*Warne*, 360 N.W.2d at 512 (citations omitted).

While it would appear from the record that, subsequent to the decree of divorce, the mortgage on the home was paid by the husband, if the scheduled payments were met, that does not impact the division which occurred in the decree. Correction of this error results in attributing an additional $14,000 to the wife and increases the total assets distributed to her to $238,998.79.

 We are satisfied that the court awarded an additional property settlement to the wife in the amount of $367.34 for 24 months in order to balance as perfectly as possible the disparity in the total property awarded to each. That disparity has been abrogated by crediting the wife with an additional $14,000 and, in fact, she now would have some $5,000 more than the husband received according to the decree of divorce. It is our conclusion, in light of the circumstances, that the decree of divorce should be further modified to delete the requirement for the 24 monthly payments by the husband to the wife.

We conclude that the decree should be modified to correct the technical error and to delete the periodic payments awarded to balance the division of the marital property. Except for this correction, we conclude

that there was no abuse of discretion by the trial court. We hold that, as modified, the decree of divorce entered by the district court should be affirmed.