Joan S. ENDRES, Plaintiff and Appellee,

v.

Robert L. ENDRES, Defendant
and Appellant.

No. 18812.

Supreme Court of South Dakota.

Argued March 20, 1995.

Decided May 17, 1995.

Rehearing Denied June 26, 1995.

Lee R. Burd, Sioux Falls, for plaintiff and appellee.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

Husband appeals division of marital property, claiming errors in valuation, consideration of tax consequences, and in the division itself. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife were married thirty-two years and, at the time of trial, were ages 55 and 51, respectively, with two adult children. Both parties sought divorce based on irreconcilable differences. The trial court granted a divorce to each party, finding Husband and Wife had equally contributed to the dissolution of the marriage.

The parties began their marriage in 1961 with few assets. Husband had started farming; he owned four cows and shared some farm equipment with his brother. During their marriage, the couple commenced and successfully operated a dairy farm and a concrete business. Husband primarily was involved with these two ventures, as well as other business interests. Husband testified at trial he was the president of the couple's dairy operation and concrete business. Until 1974, Wife worked full-time, and then part-time after the birth of their two children, as a secretary at the local hospital. Wife primarily cared for the home and the parties' two children. She worked from time to time as a bookkeeper, at no salary, at both the concrete business and the dairy, as well as other of Husband's business ventures. Wife also had responsibilities involving the farm and some housekeeping duties for the hired men who lived first in the couple's home and later in trailers on the couple's property.

By the time of the parties' divorce, they had accumulated a substantial marital estate. The marital property included Watertown Concrete, Willow Creek Dairy, securities, a partnership interest in the Pierre Governor's Inn, commercial buildings, rental property, and other real estate, as well as personal property, investment, checking, and savings accounts, the marital residence, some adjoining farmland, and six vehicles. Each party called two certified public accountants, as well as several appraisers and persons involved in businesses similar to the parties', to testify regarding the value of the marital assets. The court heard testimony on the value of this property from the parties and their experts for four days. The trial court found the net value of the marital estate to be in excess of $5.3 million and, finding both parties had contributed equally in the accumulation of said property, attempted a 50/50 division. Following the trial court's issuance of its memorandum decision, but prior to its entering a final judgment and divorce decree, Husband motioned to reopen to consider additional evidence regarding tax consequences and the state of Husband's health; such motion was denied. The trial court then issued its final judgment and decree.

Husband appeals the trial court's final judgment claiming errors in valuation, failure to consider tax consequences, and the division of the property itself.

## STANDARD OF REVIEW

### I. Division of Property

Our standard of review of a trial court's division of marital property is well established. "This court will not disturb a division of property unless it clearly appears the trial court abused its discretion." *Vander Pol v. Vander Pol,* 484 N.W.2d 522, 524 (S.D.1992); *Kanta v. Kanta,* 479 N.W.2d 505 (S.D.1991); *Johnson v. Johnson,* 471 N.W.2d 156 (S.D.1991); *Fox v. Fox,* 467 N.W.2d 762 (S.D.1991). While this discretion is broad, it is not uncontrolled and must be soundly and substantially based on the evidence. *Gibson v. Gibson,* 437 N.W.2d 170, 171 (S.D.1989); *Goehry v. Goehry,* 354 N.W.2d 192 (S.D. 1984); *Owen v. Owen,* 351 N.W.2d 139 (S.D. 1984). The omission of assets which should properly be included as marital property is an abuse of discretion. *Gibson,* 437 N.W.2d at 171; *Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982); *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977).

This Court has consistently recognized the principal factors to be considered in making an equitable property division as: (1) the duration of the marriage; (2) the value of the property; (3) the age of the parties; (4) the health of the parties; (5) the parties' competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets. *Kanta,* 479 N.W.2d at 508; *Ryken v. Ryken,* 461 N.W.2d 122, 126 (S.D.1990) (*Ryken II* ); *Baltzer v. Baltzer,* 422 N.W.2d 584 (S.D.1988).

*II. Valuation of Property*

█ Our standard of review of a trial court's valuation of marital property is also well established. This Court may disturb a trial court's property valuation only if such valuation is clearly erroneous. *DeVries v. DeVries,* 519 N.W.2d 73, 75 (S.D.1994); *Vander Pol,* 484 N.W.2d at 524; *Clarke v. Clarke,* 478 N.W.2d 834 (S.D.1991); *Johnson,* 471 N.W.2d at 162; *Herrboldt v. Herrboldt,* 303 N.W.2d 571 (S.D.1981). The trial court is required to place a value on all of the property held by the parties and to make an equitable distribution of that property. *Caughron v. Caughron,* 418 N.W.2d 791, 792 (S.D.1988); *Guindon,* 256 N.W.2d at 897. Failure to place a value on the property of the parties for purposes of equitable distribution is reversible error. *Caughron,* 418 N.W.2d at 792; *Johnson v. Johnson,* 300 N.W.2d 865, 868 (S.D.1980). Where valuations are not agreed upon, the parties should be prepared to proceed with hard evidence and the court need only find a value within a reasonable range. *Vander Pol,* 484 N.W.2d at 524; *Clarke,* 478 N.W.2d at 837; *Hanks v. Hanks,* 296 N.W.2d 523, 526 (S.D.1980). The trial court is not required to accept either party's proposed valuation. *Strickland v. Strickland,* 470 N.W.2d 832, 837 (S.D.1991); *Hanks,* 296 N.W.2d at 526.

### ANALYSIS AND DECISION

*I. Property Valuation*

Husband claims the trial court erred in both recognizing and valuing goodwill assigned to the concrete business. Husband's specific claim is that the goodwill, if any, of the parties' concrete business is due to his individual efforts and dependent on his continuing to operate the business and, therefore, should not attach to the business entity.

█ SDCL 25–4–44 authorizes the court to "make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife." South Dakota is considered an "all property state," in that "all property of either or both divorcing parties is subject to equitable division by the court, regardless of title or origin." *Radigan v. Radigan,* 465 N.W.2d 483, 486 (S.D.1991).

Our statutes define the goodwill of a business as property and, thus, it is subject to division in a marital dissolution proceeding. SDCL 43–35–6 provides: "The good will of a business is the expectation of continued public patronage, but it does not include a right to use the name of any person from whom it was acquired. The good will of a business is property, transferable like any other." This Court has previously recognized the goodwill of a business as property. *See Chamberlain Livestock Auction, Inc. v. Penner,* 462 N.W.2d 479 (S.D.1990); *Quick v. Bakke, Kopp, Ballou & McFarlin, Inc.,* 380 N.W.2d 364 (S.D.1986); *GMS, Inc. v. Deadwood Social Club, Inc.,* 333 N.W.2d 442 (S.D.1983); *Kohlman v. Cahill,* 301 N.W.2d 664 (S.D. 1981).

This Court has not, however, previously considered the question of goodwill in a marital property division. The prevailing view of courts that have considered the question is that goodwill of a professional practice or business is a business asset with a determinable value and is marital property subject to division in a divorce proceeding. *See Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (App. 1981); *In re Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979); *In re Marriage of White,* 98 Ill.App.3d 380, 53 Ill.Dec. 786, 424 N.E.2d 421 (1981); *Heller v. Heller,* 672 S.W.2d 945 (Ky.Ct.App.1984); *Hanson v. Hanson,* 738 S.W.2d 429 (Mo. 1987); *In re Marriage of Hull,* 219 Mont. 480, 712 P.2d 1317 (1986); *Poore v. Poore,* 75 N.C.App. 414, 331 S.E.2d 266 (1985); *Weaver v. Weaver,* 72 N.C.App. 409, 324 S.E.2d 915 (1985); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983); *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980) (*overruled, on other grounds by Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981)); *In re Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979). *See also* Annot., 52 A.L.R.3d 1344 (1973); 76 A.L.R.4th 125 (1990); 79 A.L.R.4th 171 (1990); 24 Am.Jur.2d *Divorce and Separation* § 899 (1983).

Some courts have held, however, that professional goodwill, as distinguished from the goodwill of a business, does not constitute

property and should not be considered as marital property subject to division in such proceedings. *See Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982); *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981). Finally, we note some courts have taken a third approach in which they recognize goodwill as marital property, but only to the extent it exists independently of the individual professional's reputation. *See Wilson v. Wilson,* 294 Ark. 194, 741 S.W.2d 640 (1987); *Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833 (1988); *Taylor v. Taylor,* 222 Neb. 721, 386 N.W.2d 851 (1986); *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986); *Geesbreght v. Geesbreght,* 570 S.W.2d 427 (Tex.Civ.App.1978).

■ *We need not consider whether professional goodwill is marital property for purposes of division in a divorce action to decide the issues presented here.* We note the trial court found that the concrete business was a commercial venture and that sufficient evidence existed to assign a value for goodwill. The trial court heard evidence from both parties' expert witnesses regarding Watertown Concrete's sales volume over a period of several years and how these figures compared to market share in the local trade area. The business' financial records and operating history were also put into evidence. Finally, the court heard evidence regarding Watertown Concrete's reputation in the community. We do not find error in the court's decision to include goodwill in the valuation of the parties' concrete business. *Bell v. Bell,* 499 N.W.2d 145, 147 (S.D.1993); *Tate v. Tate,* 394 N.W.2d 309, 310 (S.D.1986).

■ Husband also claims error in the trial court's valuation of the goodwill. The trial court valued the concrete business at $1,865,178.00, which included a value for goodwill of $297,888.36. These figures lie within the range of values provided by the parties' experts and are supported by the record, therefore, we do not find the trial court's valuation erroneous. *Bennett v. Bennett,* 516 N.W.2d 672, 676 (S.D.1994); *Pennock v. Pennock,* 356 N.W.2d 913, 914 (S.D. 1984)

The method used to determine the goodwill value was the capitalization of excess earnings method, which has been cited with approval for determining the value of goodwill in marital property divisions.[1] "We do not require exactitude in the trial court's valuation of closely held businesses and, as long as its finding falls within a reasonable range of figures in evidence, we will not disturb the valuation." *Johnson,* 471 N.W.2d at 162; *Strickland,* 470 N.W.2d at 837.

■ Husband also argues the trial court erred in valuing certain farm property; namely, lots 1, 5,[2] and 19 on Highway 212. Husband presented no evidence regarding this property's value other than his personal opinion. We have previously noted "[w]here the parties come into the trial court without even a stipulation as to the values, then they had better be prepared to produce hard evidence as to those values other than their own personal opinions." *Hanks,* 296 N.W.2d at 526. We cannot say the trial court erred in its valuation of this property when the value assigned was supported by Wife's expert witness' testimony.

1. See *Moffitt v. Moffitt,* 813 P.2d 674, 676 (Alaska 1991); *Mitchell v. Mitchell,* 152 Ariz. 317, 732 P.2d 208, 214 (1987); *In re Marriage of Hargrave,* 163 Cal.App.3d 346, 209 Cal.Rptr. 764, 770 (1985); *In re Marriage of Huff,* 834 P.2d 244, 256 (Colo.1992); *Loveland v. Loveland,* 91 Idaho 400, 422 P.2d 67, 69 (1967); *Porter v. Porter,* 526 N.E.2d 219, 224 (Ind.Ct.App.1988); *Walters v. Walters,* 419 S.W.2d 750, 752 (Ky.Ct.App.1967); *Nelson v. Nelson,* 411 N.W.2d 868, 873 (Minn.Ct. App.1987); *Hull,* 712 P.2d. 1317, 1322; *Ford v. Ford,* 105 Nev. 672, 782 P.2d 1304, 1309 (1989); *Dugan,* 457 A.2d 1, 9; *Hurley,* 615 P.2d 256, 259; *Finocchio v. Finocchio,* 162 A.D.2d 1044, 556 N.Y.S.2d 1007, 1009; *McLean v. McLean,* 323 N.C. 543, 374 S.E.2d 376, 385 (1988); *Russell v. Russell,* 11 Va.App. 411, 399 S.E.2d 166, 169 (1990); *Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175, 179–80 (1984); *Spheeris v. Spheeris,* 37 Wis.2d 497, 155 N.W.2d 130, 135 (1967); *Neuman v. Neuman,* 842 P.2d 575, 581 (Wyo.1992). See also 2 Arnold H. Rutkin et al., Valuation & Distribution of Marital Property § 23.05(2)(b) (1995).

2. Appellant's brief indicates the trial court referred to this lot number in error and that the correct lot number is 12. If this reference was in error, this can be corrected on remand.

Husband also claims the trial court erred in refusing to assign a negative value to CES Farms, an investment of the parties. Both Husband and Wife presented testimony regarding the value of this property. Husband claimed the parties' interest in the property had a value of –$122,395, while Wife argued the value was $230,000. Both parties agreed they had invested $176,000 in the property. The trial court set a zero value on this property based, in part, on its "perilous financial condition." The trial court is not required to accept either party's proposed valuation. It is only necessary that the value assigned by the court lies within a reasonable range of figures in evidence. *Studt v. Studt*, 443 N.W.2d 639, 641 (S.D. 1989). The court's zero valuation is well within the range of –$122,395 and $230,000 presented by the parties; therefore, we find no error.

Both parties concede, however, that three lots were omitted from the trial court's valuation, and that errors were made in the valuation of certain bonds and a partnership interest in property known as Fifth Street Plaza. Failure to place a value on marital property is reversible error and we reverse and remand to the trial court for further findings on the valuation of this property and to correct any errors in valuation of the bonds and partnership interest. *Studt*, 443 N.W.2d at 642; *Caughron*, 418 N.W.2d at 792.

*II. Consideration of Tax Consequences*

Husband next argues the trial court failed to consider the tax consequences of its decision when it held the property division and tax consequences would be equally shared. Specifically, Husband claims the trial court's decision results in double taxation of the Willow Creek property given to Wife, that the trial court failed to consider tax consequences in valuing certain income assets such as grain which will be taxable upon sale and, finally, that the trial court failed to deduct the federal income tax liability which would accrue if Husband liquidated certain corporate assets to pay Wife the cash amount awarded by the court. Though evidence was presented at trial regarding the tax conse-

quences of a property division, we note Husband attempted to introduce most of this information after the trial court had issued its memorandum decision.

We have previously stated " 'the well-settled rule [is] that theoretical tax consequences on transactions which are not necessary or probable but merely conjectural need not be considered.' " *Krage v. Krage*, 329 N.W.2d 878, 881 (S.D.1983) (quoting *Wallahan v. Wallahan*, 284 N.W.2d 21, 25 (S.D. 1979)); *Lien v. Lien*, 278 N.W.2d 436 (S.D. 1979).

Tax consequences relating to the disposition of the Willow Creek property were testified to at trial by Husband's accountant. The trial court, in its findings of fact and conclusions of law which are incorporated into the court's final judgment and decree of divorce, stated: "If defendant or any of his business entities are required to pay tax reportable on Form 1040 or Form 1120 corporate return as a result of any land transfers to plaintiff pursuant to the court's division of property herein, said tax consequences shall be divided equally between the parties." Husband complains that double taxation will occur in the transfer of certain property belonging to Willow Creek Dairy, *i.e.*, a tax consequence to the corporation and to himself personally. However, the court's equal distribution of the tax consequences between the parties includes "defendant or any of his business entities." The trial court obviously considered, and made arrangement for, the very consequence of which Husband now complains.

Husband also claims the trial court failed to consider tax consequences on the sale of grain and that tax consequences of the sale should have been figured into the asset's valuation. Both parties presented evidence of valuation and the trial court found values consistent with that evidence. We note the sale of grain would occur even if the parties were not divorcing and cannot, then, be considered a tax consequence of the court's property division. *See Kelley v. Kirk*, 391 N.W.2d 652, 657 (S.D.1986).

Husband further claims he must liquidate assets to pay the cash sum awarded

by the court to Wife. We have stated that a trial court must deduct the federal income tax liability on a total liquidation of assets "if (a) the property division compelled a total liquidation of assets, and (b) if it were probable that the most disadvantageous method of sale from a tax standpoint would be used." *Id.* Considering all the evidence of the properties' worth and cash flowing therefrom, as well as the relatively small amount of debt on the properties, we believe Husband is not without options to obtain funds necessary to pay Wife the cash sum awarded and the property division does not compel a liquidation of assets. We also note that all the decree does is to declare a cash payment to Wife to maintain the 50/50 division of the property; it does not compel a liquidation of assets. See *Kelley,* 391 N.W.2d at 659 (Hertz, Acting Justice, concurring specially); *Lien,* 278 N.W.2d at 441.

We find no error in the trial court's consideration of the tax consequences of its property division and, therefore, affirm the trial court's decision on this issue.

### III. Property Division

Finally, Husband appeals the trial court's division of the property itself, claiming the 50/50 division was an abuse of discretion in this case. In its memorandum decision, the trial court explained in detail its reasoning in making the individual property divisions and how it arrived at certain figures. A cash award to Wife to maintain the 50/50 division was spread over a period of ten years following an initial payment of $280,707. The trial court's decision also gave Husband the right to rent the farmland and Lot 19 from Wife for the next five years and gave Husband the right of first refusal if any of the properties are offered for sale.

Husband claims the division places an undue burden upon him to continue working for an additional ten years and that his health problems should have been given consideration in this regard. Husband further claims that, while Wife contributed as a housewife and mother and occasionally worked in the business, the court erred in not giving more emphasis to the fact that Husband was the primary contributor to the parties' marital

assets. Finally, Husband argues the trial court erred when it granted property Husband considers to be "safe and secure" to Wife while granting Husband all the "risk" property and assets that require capital investment to continue producing income.

We first note the trial court found both parties had contributed equally to the accumulation of the marital estate during their thirty-two years of marriage and therefore made a 50/50 division of the property. This Court has consistently acknowledged that the performance by a housewife and mother of typically domestic duties constitutes a valuable contribution to the accumulation of the marital property and, accordingly, warrants an important consideration in the division of property. *Johnson,* 471 N.W.2d at 160; *Strickland,* 470 N.W.2d at 839; *Garnos v. Garnos,* 376 N.W.2d 571, 573 (S.D.1985).

We next note the trial court stated in its memorandum decision that "[t]he assets assigned to the defendant are primarily those which he desires.... [and] [t]he assets assigned to the plaintiff are largely those which she desires." The court further noted that Husband's grant of property carried with it some risk, but that Husband, "an astute and enterprising businessman," was well-suited to maximize the potential of these assets while Wife's grant of property carried a lesser risk but with a corresponding limited rate of return. A trial court's division of property is not bound by any mathematical formula. *Korzan v. Korzan,* 488 N.W.2d 689, 693 (S.D.1992); *Johnson,* 471 N.W.2d at 160; *Baltzer,* 422 N.W.2d at 587. Apart from the principal factors noted earlier in this opinion, the trial court is guided by SDCL 25-4-44 which requires an equitable division of property and provides, in pertinent part: "In making such division of the property, the court shall have regard for equity and the circumstances of the parties." Husband acknowledges in his brief that "Joan had little to do with business decisions and was often uncomfortable with the risk associated with the businesses." He testified he was the president of the dairy and concrete businesses. We do not consider whether we would have made a like ruling, but whether "a judicial mind, in view of the law and the

circumstances of the particular case, could reasonably have reached such a conclusion." *DeVries*, 519 N.W.2d at 75. We do not find the trial court's division to be an abuse of discretion considering the parties' past involvement with particular aspects of the marital property and Husband's own admissions.

We find no support in the record for Husband's claim that the trial court's property division requires that he continue working for ten years. Husband may choose to continue working or he may sell all or part of his assets. Nothing in the divorce decree requires one outcome or the other. "[A]n inevitable result of virtually every property division is that the husband who is required to turn over part of his assets to his wife at the termination of a marriage has fewer assets after the division than before. Such a result cannot defeat an equitable division of assets." *Lien*, 278 N.W.2d at 442.

Husband claims his health concerns should have been considered by the trial court in making its division of the marital property. At trial Husband stated he had some minor health problems and planned to have a physical examination when he was "through with this here." Following the court's issuance of its memorandum decision indicating its property division, Husband made a post-trial motion to reopen the trial, attaching the results of his physical examination and recent hospitalizations. The trial court denied the motion.

The decision to reopen a case after the parties have rested is a matter within the sound discretion of the trial court. *Albers v. Kuper*, 518 N.W.2d 745, 747 (S.D. 1994). " 'The trial court has a wide discretion in passing on a motion to reopen, and such discretion is to be liberally exercised in behalf of allowing the whole case to be presented, for the best advancement of the ends of justice.' " *Rosen's Inc. v. Juhnke*, 513 N.W.2d 575, 577 (S.D.1994) (quoting 88 C.J.S. *Trial* § 104 (1955)). We note Husband could have scheduled this examination prior to trial

or requested a continuance if he felt such would provide evidence relevant to a marital property disposition.[3] Based on his own trial testimony, Husband felt some concern over the state of his health but acknowledged only "minor health problems." Instead, Husband attempts to present this evidence two months after the court has issued its memorandum decision dividing the property. We see no abuse of discretion.

Affirmed in part, reversed in part and remanded. Both parties shall be responsible for their individual appellate attorney fees.

SABERS, AMUNDSON and KONENKAMP, JJ., concur.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.

---

3. We further note in Husband's affidavit dated June 27, 1993 in response to Wife's initial complaint he stated: "I have had some health problems recently. I have had to go to the doctor on several occasions for heart problems and it appears I may have some health concerns." This was one and one-half years prior to trial and provided Husband ample time to obtain a complete medical examination.