**Donna May JOHNSON, Appellant (Plaintiff),**

v.

**Thomas R. JOHNSON, Appellee (Defendant).**

**No. 92–127.**

Supreme Court of Wyoming.

April 16, 1993.

Daniel E. White of Gusea & White, P.C., Cheyenne, Philip White, Jr., Laramie, for appellant.

Linda Steiner Lewis of Rogers, Blythe & Lewis, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Donna May Johnson (appellant) appeals the order and judgment modifying the decree of divorce entered by the district court. The gravamen of appellant's claim of error is that the district court impermissibly modified a property settlement provision of the original divorce decree in violation of long-standing Wyoming precedent. *See, e.g. Pavlica v. Pavlica,* 587 P.2d 639 (Wyo.1978). We agree. Accordingly, we reverse and remand with instructions that the district court enter an order in conformity with this decision.

Appellant listed these issues:

I.  Was Donna Johnson afforded a fair hearing of her Petition for Modification?

II.  Did the trial court err when it ruled that Donna Johnson's one-third share of the retirement benefits should be applied against the net amount of the benefit, thereby requiring her to share in the cost of providing her ex-husband's new wife with a survivor annuity?

A.  Did the trial court have authority to grant what Donna Johnson sought?

B.  Did the trial court have authority to modify the decree to give Thomas Johnson and his new wife the power to reduce Donna Johnson's share below one-third?

Appellee Thomas R. Johnson, appellant's former husband, responded with this statement of the issues:

I.  Did the process which led to the *Order and Judgment Modifying Decree of Divorce* violate a due process right of appellant?

II.  Other than appellant's due process issue, does appellant's appeal fail because appellant's Argument II was not presented below and is now being raised for the first time on appeal?

III.  Assuming the Wyoming Supreme Court will consider questions presented under appellant's Argument II, did the trial court have jurisdiction to enforce its judgment by entering the *Order and Judgment Modifying Decree of Divorce?*

IV.  Assuming the district court treats the appeal as arising under Rule 60(B), did the district court abuse its discretion by clarifying the intent of Provision 7?

V.  Was the court's treatment of the pension plan as a marital asset proper?

## FACTS

After twenty-seven years of marriage, appellant filed for divorce. Appellee was employed by the company now known as US West, having worked there for twenty-eight years. The court determined appellee's retirement plan to be marital property and, thus, considered the plan, along with other property, in making its division. During the divorce trial, the parties disagreed about the division of the retirement

plan. Appellant asked to be awarded one-half of the plan; appellee asked to be awarded the entire plan, expressing his willingness to set over to appellant their house and the parties' equity in it. Neither party introduced evidence of the total contributions to the plan or its present value. Appellee presented no evidence concerning his future marital plans or future plans to elect a survivor's annuity under the plan.

The letter opinion of the trial court stated:

> The wife has a rightful claim to the pension plan and it is the duty of this Court to attempt to effect an equitable distribution of such asset. The Court notes that the equity in the house could be [as] high as $50,000.00. The house will be awarded to the wife. The wife claims a 50% interest in the pension plan in addition to the equity to the house. The court believes that a 50–50 split of the pension plan proceeds when drawn by the husband is not equitable, for several reasons. First, if the husband were to retire at age 50, a year from now, he would draw only $900.00 per month. Should he choose to retire at age 62, the evidence shows that he would be entitled to approximately $2,500.00 per month, the increase taking place, on a proportional basis, after the dissolution of the marriage. The increased monthly increment can be accounted for on the basis of mortality tables and in addition, the compounding of investment income held within the annuity itself. It is unfortunate that the parties did not produce any evidence pertaining to the present value of the pension plan. The Court, therefore, is left to its own devices to attempt to do equity. Accordingly the wife will be entitled to share in one-third of the pension proceeds when drawn by the husband. This does not include social security payments.

The divorce decree provided for the division of the pension plan in the following language:

> 7. That the Defendant [Thomas Johnson] is and shall be entitled to receive an income from his pension plan as a result of his occupation with Mountain Bell and US West. That Plaintiff [Donna Johnson] is hereby awarded one third (⅓) of the pension proceeds when said pension proceeds are drawn by the Defendant. This does not include Defendant's social security benefits. That in the event Plaintiff remarries, her share of the pension proceeds drawn by the defendant shall be limited to one sixth (⅙) of said pension proceeds. That a copy of this Divorce Decree shall be sent to the administrator of said plan.

Neither party appealed the trial court's decision.

Several months after entry of the divorce decree, appellant received a letter from US West, appellee's employer, informing her that the divorce decree provisions relating to the plan were insufficient in several respects to meet federal statutory requirements for a qualified domestic relations order. In its letter, US West suggested modification of certain items in the divorce decree.

Subsequently, appellant filed a petition for modification of the divorce decree which sought amendment of the paragraph relating to the plan in accordance with the suggestions of US West. Appellee objected to the petition. In his objection he informed the trial court that since entry of the divorce decree he had remarried and his wife was entitled to a survivor annuitant benefit under the plan.

The parties engaged in protracted and unsuccessful negotiations. Finally, the parties appeared for a hearing on the petition before the same district court judge who had issued the original divorce decree. During that hearing, the judge came to understand the sticking point between the parties. In light of appellee's remarriage, appellant was concerned that her one-third share of the retirement plan might suffer diminution if, and when, appellee elected a survivor annuitant benefit for his new wife under the plan. Appellant's attorney succinctly expressed this concern to the trial court:

> We are simply trying to clarify * * * whether the court intended that [my

client's] one-third share would come off the top before the election of any of these benefits, or whether her one-third share is to be calculated on the net that is available, in the event [appellee] does elect one of these survivor annuities.

To this concern, the trial court responded:

Well, I think it's obvious that what I was trying to do was [e]ffect a property settlement. And so, hypothetically, there's a gross figure—fair market value, let's say, * * * $300,000 for the pension, she should get one-third of that figure. That was my intent.

  *  *  *  *  *  *

And so in answer to your question, yes, it is one-third of the *gross* amount. That was my intent * * *. (Emphasis added).

After further colloquy, the court again stated its intent, that appellant's share of the pension was to be one-third of appellee's *gross* pension benefits:

No, one third of *gross*. Assuming he hadn't remarried, it was the court's intent to give [appellant] one-third of his pension. That's the only evidence I had. He was married at the time. He couldn't have been remarried. I had no arguments that he elected. I had no arguments that he remarried, or planned to remarry. (Emphasis added).

At this point in the exchange, appellee's attorney interjected, "Your honor, my client indicates that he's amenable to the one-third *gross* position." (Emphasis added). The trial court once again stated that "one-third gross" had been the intent of the court in the original divorce decree.

The parties and the trial court having thus come to an apparent resolution of the sticking point, the court asked appellant's attorney to prepare the order. He prepared the order and submitted it to appellee's attorney for approval. The subject paragraph of the order read:

(g) The plan shall pay directly to the alternate payee her share of the benefits of the plans as set forth in subparagraph (f) as set forth above. It is the specific

intention of this Court that the former spouse alternate payee's share of the participant's pre-retirement or post-retirement pension benefits shall be computed on the basis of the gross amount of the participant's monthly pension benefit amount and that the alternate payee's share shall not be reduced to reflect the cost of any post-retirement joint and survivor annuity which the participant may elect.

Appellee's attorney objected to the proposed modification, claiming that the trial court's ruling was that appellant was to receive one-third of the net amount. The court, agreeing with appellee's attorney, asked appellee's attorney to prepare the order of modification. The amended paragraph of the order read:

(g) * * * It is the specific intention of this Court that the former spouse alternate payee's share of the participant's pre-retirement or post-retirement pension benefits shall be computed on the basis of the gross amount of the participant's monthly pension benefit amount, "gross" being defined as the amount the participant receives AFTER making an election regarding the survivor annuitant.

Appellant filed this appeal.

## DISCUSSION

In several past domestic relations decisions this court has recognized that "retirement funds, whether vested, nonvested, or not matured, are marital property divisible upon divorce." *Broadhead v. Broadhead,* 737 P.2d 731, 734 (Wyo.1987); *see also Ebeling v. Ebeling,* 782 P.2d 584 (Wyo. 1989). It is elementary that "[t]he trial court does not have power to modify a decree * * * if it is in the nature of a property settlement." *Pavlica,* 587 P.2d at 640.

In the modification proceeding here, the trial court acknowledged these established rules of precedent case law. Explaining that part of the divorce decree awarding appellant one-third of the retirement funds, the court said it was trying to effect a property settlement. Since the parties had not introduced evidence of the present val-

ue of the retirement funds at the divorce trial, the court was forced to divide that portion of the marital property as best it could. In addition, no evidence of appellee's future marital plans was presented at the divorce trial.

At the modification hearing the trial court acknowledged these matters and explained its property division, using a hypothetical example. Assigning a hypothetical fair market value of $300,000 to the retirement funds, the court simply said that appellant "should get one-third of that figure. That was my intent."

Against this backdrop it is no surprise that at the modification hearing the trial court informed the parties that its intent was to award appellant one-third of the *gross* pension. Obviously, at the time of that property division, appellee was not remarried.

From our reading of the record of the modification hearing at which the trial court clarified its intention in this respect, we are satisfied that appellee accepted that clarification. His attorney told the trial court, "Your honor, my client indicates that he's amenable to the one-third *gross* position." (Emphasis added). We are also satisfied that the record shows the trial court and the parties had resolved the sticking point at the close of the modification hearing in question: appellant's share was one-third of the *gross* pension. The trial court requested appellant's attorney to prepare the appropriate order, a task usually assigned to the prevailing party.

Although we are at a loss to understand why the trial court later changed its mind and signed an order to the effect that appellant's award was one-third of the *net* pension, we hold that such a change was error. Such change was, in effect, a modification of the property settlement adjudicated at the divorce trial. The trial court lacked the power to effect that modification. *Pavlica*, 587 P.2d at 641.

We reverse and remand with directions that the trial court enter the order as pre-pared and presented by appellant's attorney.

TAYLOR, J., filed a dissenting opinion in which CARDINE, J., joined.

TAYLOR, Justice, dissenting, with whom CARDINE, Justice, joins.

Two fundamental questions are presented in this appeal. First, whether the district court had jurisdiction to enter an amended judgment and, second, whether the amended judgment corrected a clerical error and preserved the intent of the original judgment. In my opinion, a careful review of the record demonstrates both the requisite jurisdiction and intent of the district court necessary to affirm the amended judgment. *See Eddy v. First Wyoming Bank, N.A.–Lander*, 713 P.2d 228, 233–34 (Wyo.1986).

## I. JURISDICTION

A judgment granting Donna May Johnson (wife) a divorce from Thomas R. Johnson (husband) was filed on December 29, 1987. Paragraph 7 of the judgment awards the wife "one third (⅓) of the pension proceeds when said pension proceeds are drawn * * * " by the husband. If the wife remarries, her share is diminished to "one sixth (⅙) of said pension proceeds."

On April 4, 1988, the husband's employer informed the wife of deficiencies in the documentation which prevented assignment of the pension share to her. For unexplained reasons, no attempts to correct the deficiencies were made until a Petition for Modification of Decree of Divorce was filed by the wife on November 17, 1989. Extended negotiations between the parties failed to produce a settlement. Ultimately, a hearing was held on February 6, 1992 to consider both the wife's petition for modification and a petition for modification of alimony filed by the husband.

The majority assumes the district court premised its jurisdiction on the wife's modification petition. The district court specifically, and properly, declined to hear evidence on the wife's petition to modify the property settlement. At the hearing, the

district court acknowledged Wyoming precedent which precludes modification of property settlements. *Pavlica v. Pavlica,* 587 P.2d 639 (Wyo.1978).

Instead, the district court requested the preparation of an amended order to correct the deficiencies. The district court, essentially, acted on its own motion under W.R.C.P. 60[1] to correct what the district court termed a "technical problem" with the judgment. W.R.C.P. 60, in pertinent part, permits the district court to correct clerical mistakes:

> (a) Clerical Mistakes.—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

In *Matter of Kimball's Estate,* 583 P.2d 1274, 1278 (Wyo.1978), this court defined a clerical mistake as, "a mistake or omission that prevented the judgment as entered from accurately reflecting the judgment that was rendered[.]"

The central purpose of W.R.C.P. 60(a) is to "effectuate the contemporaneous intent of the court and ensure that the judgment reflects the intent." *Spomer v. Spomer,* 580 P.2d 1146, 1149 (Wyo.1978). In *Forney v. Minard,* 849 P.2d 724, 728 (Wyo. 1993) and *Dice v. Dice,* 742 P.2d 205, 206–07 (Wyo.1987), this court acknowledged that a district court possesses the power to amend a judgment to reflect the proper value of an asset and the subsequent distribution of the property. *See Kane v. Kane,* 706 P.2d 676, 679 (Wyo.1985). The district court, therefore, had jurisdiction to amend the judgment.

## II. AMENDED JUDGMENT

After the district court declined to hear the wife's modification petition, her counsel made an offer of proof. It was during this exposition that the colloquy regarding "gross" or "net" pension benefits developed. In reviewing the transcript, it is clear that no "meeting of the minds" occurred between the parties on the meaning of the terms. The assumption of the majority opinion is that such an agreement was necessary. This is incorrect. In correcting a judgment, the central issue is effectuating the original intent of the district court. *Spomer,* 580 P.2d at 1149. The question then is not what interpretation the parties place on the district court's use of the terms "gross" and "net," but what meaning the district court intended for those terms in the amended order.

The original judgment pronounced that the wife was entitled to a share in the husband's pension. The size of the wife's share depended on her future marital status. The wife's share, one-third or one-sixth, remained the same under both the original judgment and the amended judgment. There was no modification of the property settlement in this regard.

The correct focus then is on the intent of the district court in the original judgment in stating the wife was entitled to a share in the "pension proceeds when said pension proceeds are drawn * * *." In its opinion letter granting the divorce, the district court noted:

> It is unfortunate that the parties did not produce any evidence pertaining to the present value of the pension plan. The Court, therefore, is left to its own devices to attempt to do equity. Accordingly the wife will be entitled to share in one-third of the pension proceeds *when drawn by the husband.*

(Emphasis added.) The language of the opinion letter and the original judgment are consistent, the wife's pension share is a fraction of the proceeds *drawn* by the husband. The verb "draw" means to withdraw money from an account. Black's Law Dictionary 494 (6th ed. 1990). Under the terms of the original judgment, the wife obtained a share of whatever amount the husband received regularly or in due course from his pension. *See* Webster's Ninth New Collegiate Dictionary 381 (1986).

[1] Same as present W.R.C.P. 60, effective March 24, 1992.

At the hearing, the district court succinctly stated the intent of the original judgment:

> [I]t was my intent that when Mr. Johnson retires, that if he gets a thousand dollars a month pension, he has to pay $330 over to Mrs. Johnson. It was no less complicated than that. I made the decision that if, as, and when it's drawn it would be shared on a one-third, two-third basis.

The language of the amended judgment, with its definition of "gross," complies with the intent of the district court as stated in the original judgment:

> It is the specific intention of this Court that the former spouse alternate payee's share of the participant's pre-retirement or post-retirement pension benefits shall be computed on the basis of the gross amount of the participant's monthly pension benefit amount, "gross" being defined as the amount the participant receives AFTER making an election regarding a survivor annuitant.

In briefing to this court and in the offer of proof made to the district court, the wife argued that her share of the pension would be impermissibly reduced by the amount of pension funds used to create an annuity. During the offer of proof, the district court addressed the possibility of pension reductions to create an annuity:

> It was my intention, based on the evidence adduced at that time, that Mrs. Johnson get one-third, Mr. Johnson get two-thirds. There was no evidence adduced as to these variations that you now bring up, and therefore, I cannot choose the rules of the game. Had that evidence been adduced as to these variations with respect to survivor annuities, then, of course. But Mr. Johnson hadn't even remarried, so it was obvious that that evidence wasn't available to be presented. It's simply beyond the court's power to go back and reopen the case. I can't do it, res judicata precludes me.

The district court properly limited its judgment to provide "clear and timely finalization * * *" of the divorce proceeding.

*Broadhead v. Broadhead,* 737 P.2d 731, 737 (Wyo.1987).

### III. CONCLUSION

The majority is sanctioning an impermissible modification of a property settlement by reversing the district court. I would affirm the district court in all respects.